**STATE FARM MUTUAL AUTOMOBILE INS. CO., Relator,**

v.

**The Honorable Roy ENGELKE, Judge of the 212th District Court of Galveston County, Texas, and the Honorable Henry Dalehite, Judge of the 122nd District Court of Galveston County, Texas, Respondent.**

No. 01–91–00989–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 5, 1992.

Roger Townsend, Ben Taylor, William J. Boyce, David E. Lueders, Houston, for relator.

Otto D. Hewitt, III, E.A. "Trey" Apffel, III, Alvin, for respondent.

Before TREVATHAN, C.J., and COHEN and O'CONNOR, JJ.

## OPINION ON MOTION FOR REHEARING

TREVATHAN, Chief Justice.

Cheryl Reed, individually and a/n/f of Brance Reed, sued State Farm for "bad faith" conduct in connection with State Farm's handling of her personal injury claims arising from an automobile accident. Both Reed and Ballard, the driver of the car who hit her head-on, were insured by State Farm. Reed sued Ballard for personal injuries. She also sought payment of her medical bills under the personal injury protection coverage of her own State Farm policy. Reed contends that State Farm employed unfair claims settlement practices and displayed bad faith conduct in the handling of her PIP claim. That claim gave rise to the "bad faith" suit from which this mandamus arises.

Reed served State Farm with interrogatories and requests for production. State Farm objected to several of the discovery requests. Those involved in this proceeding included interrogatories 7, 8, 13, 14, 15, and 16–24, as well as five requests for production. Following a hearing on Reed's motion to compel, the trial court ordered State Farm to respond to all the interrogatories and requests for production. State Farm sought mandamus requiring the trial judge to vacate these discovery orders of September 23, and September 30, 1991. We granted leave to file and ordered Reed, the real party in interest, to respond.

In our original, unpublished opinion we conditionally granted the writ as to interrogatories 14, 15, and 16–24. Reed informs us that in response to that opinion, she has withdrawn those interrogatories. Therefore, the issues involving interrogatories 14, 15, and 16–24 are moot and we will not address them here. On rehearing, State Farm asks us to reconsider our original disposition regarding interrogatories seven and eight, and requests for production two and five. We conditionally grant mandamus in part.

Mandamus will issue only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no adequate remedy by way of appeal. *John-son v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). In a discovery mandamus, the burden is on the party resisting discovery to specifically plead the particular exemption or immunity relied on and produce evidence establishing the applicability of his claim. Tex.R.Civ.P. 166b(4).

The trial court required State Farm to answer the following interrogatory:

*Interrogatory No. 7:*

Identify fully each and every lawsuit filed against you in the past five (5) years involving an allegation of "bad faith," Deceptive Trade Practices, unfair practices in the business of insurance, unconscionable action or course of action, violations of Article 21.22 of the Texas Insurance Code, breach of the duty of good faith and fair dealing, or any violation of any statute, rule or regulation relating to the business of insurance, or any similar claim, state the following:

a) the style, cause number, court, county, and state of the lawsuit;

b) the identity of the person(s) bringing suit against you;

c) the identity of the attorney representing the person(s) who brought suit against you;

d) the nature of the claims against you;

e) the resolution, if any, to such lawsuit (e.g., the type of judgment rendered, the amount of any judgment, or the amount of any settlement);

f) whether or not Dr. Gary C. Freeman had performed independent medical examination in the case.

State Farm argued at the hearing that interrogatory seven was overbroad, burdensome, and harassing. It introduced evidence to support its arguments. However, based upon the record originally provided to this Court by State Farm, we determined that State Farm had not made a timely written objection to interrogatory seven on those grounds. Accordingly, we held that State Farm had waived its objection of burdensomeness as to interrogatory seven. *Peeples v. The Fourth Court of Appeals,* 701 S.W.2d 635, 637 (Tex.1985); *Boring*

*and Tunneling Co. v. Salazar,* 782 S.W.2d 284, 288 (Tex.App.—Houston [1st Dist.] 1989, orig. proceeding); *Kentucky Fried Chicken v. Tennant,* 782 S.W.2d 318, 320–21 (Tex.App.—Houston [1st Dist.] 1989, orig. proceeding).

On rehearing, State Farm now asserts that it preserved its objection to interrogatory seven on grounds of burdensomeness by objecting in 1989 to an identical interrogatory on those grounds. State Farm provides us with an exhibit containing interrogatories submitted by Reed on July 11, 1989, in which interrogatory no. 18 is the same as the current interrogatory seven. State Farm's answers to those interrogatories, also submitted to us for the first time on rehearing, contained an objection to interrogatory no. 18 on grounds that it was "overbroad to the degree of abuse."

The threshold issue, then, is whether State Farm preserved its objection to interrogatory seven by virtue of its earlier objection to interrogatory 18. Certainly, it is the better practice to initially provide the appellate court with a record sufficient to support the relief a party seeks, rather than to wait until rehearing to bring forward new exhibits. Nevertheless, because this issue raises a question not yet clearly addressed in case law, we hesitate to dispose of it on the basis of State Farm's procedural tardiness. Accordingly, we grant point three of State Farm's motion for rehearing in order to address the effect of its newly provided evidence.

Rule 166b(4), added by amendment in 1988, provides in relevant part:

> 4. **Presentation of Objections.** Either an objection or a motion for protective order made by a party to discovery *shall* preserve that objection *without further support or action* by the party unless the objection ... is set for hearing and determined by the court. Any party may at any *reasonable* time request a hearing on any objection or motion for protective order. The failure of a party to obtain a ruling *prior to trial* on any objection to

discovery or motion for protective order does not waive such objection or motion.

■■■ The rule clearly provides that an objection is preserved *without further action* by the party objecting unless it is set for hearing and determined by the trial court.[1] Furthermore, under the rule, the objecting party no longer has the burden to set a hearing and obtain a ruling on its objections. Either party may do so at any *reasonable* time, which, according to the rule, would appear to be anytime prior to trial. The rule further provides that the objection is not waived, even if no ruling is obtained prior to trial. Conceivably, then, State Farm could have proceeded to trial with its 1989 objection to interrogatory no. 18 in place and that objection would have been preserved. Since interrogatory seven is merely a restatement of interrogatory 18, the objection is, therefore, good against it.

Because we held in our original opinion that State Farm had waived its objection, we did not reach the question of the sufficiency of the evidence presented by State Farm to prove that interrogatory seven was unduly burdensome. Now, however, having found that the objection was preserved, we must determine whether, in light of the evidence before it, the trial court abused its discretion in ordering State Farm to answer interrogatory seven.

On direct examination, the representative for State Farm stated that there is no list of lawsuits against State Farm. The only way to determine the basis for any lawsuits would be to examine the pleadings that are contained in the individual claim files. In 1990, there were over 500,000 reported claims in Texas. Each claim file would have to be examined manually to determine whether the claim involved litigation and the basis for the litigation. That procedure would require the full time effort of 27 people for one year. Plaintiff seeks information for the past five years. The cost to provide that information, at an

---

1. Here, the discovery disputes were not set for hearing until the hearing before Judge Engelke that gave rise to this mandamus.

average salary of $32,500 per person, would come to $2.7 million.

However, later, on cross examination, the following exchange occurred:

Q.: Miss Herrin, do you have any way available to you to get a computer print-out or readout of some sort where you could obtain a list of files in litigation with those files in litigation being broken down by specific type of claim such as uninsured motorist, P.I.P., med pay, third party liability?

A.: Yes.

Q.: How long has that option been available to you?

A.: Well, I suppose the option is there. It's just asking for it to be programmed. We don't have a need for that.

Q.: Who would you ask to do that? Could you do it yourself?

A.: No....

Q.: What about the person in charge of the computer operation or computer administration?

A.: Yes....

Q.: Could the folks there at the Austin office in South Texas regional data processing center tell us exactly what it would take to obtain the various types of information that we have requested today? ...

A.: Which ones?

Q.: Lawsuits. Cases in litigation broken down by type of claim, U.I.M., P.I.P., med pay?

A.: Yes.

■ Based upon this evidence, we hold that the trial judge did not abuse his discretion in ordering State Farm to answer interrogatory seven *insofar as that order requires State Farm to provide the requested information for the state of Texas in the form of a computer generated response.* Accordingly, we conditionally grant mandamus requiring the trial court to modify its written order concerning interrogatory seven and to limit the information State Farm is required to provide to the information available through State Farm's computer listings of lawsuits filed in the state of Texas.

We next consider State Farm's contention that we erred in our decision to affirm the trial court's order directing State Farm to answer interrogatory no. 8.

*Interrogatory No. 8:*

For the most recent five (5) years, please provide the following information:

a) the identity of each person who has communicated any type of complaint to you relating to your failure to pay a claim or your delay in payment of a claim made pursuant to any policy issued by you;

b) with regard to each person identified above whether or not you communicated with the Texas State Board of Insurance or any other regulatory agency with regard to the complaint; and,

c) identify the Texas State Board of Insurance or other agency representative who was involved with the complaint.

State Farm objected to this interrogatory on grounds that (1) State Farm does not keep records of the information sought and (2) the information may be ascertained from public records.

As noted above, State Farm's representative testified at the hearing that State Farm's computer system could be programmed to produce the information sought in interrogatory eight. Based upon the evidence presented at the hearing, we cannot say that the trial court abused its discretion in ordering State Farm to answer interrogatory no. eight.

On rehearing, State Farm insists that even if it waived or failed to prove its burdensomeness objection to interrogatory eight, it pleaded a valid exemption under TEX.R.CIV.P. 168(2). State Farm stated in its objection to interrogatory eight that the information sought by that interrogatory is a matter of public record. State Farm further insists that rule 168 does not make convenience to the plaintiff a relevant consideration in a discovery dispute. State Farm argues that each rule, including rule 168, must be applied in accordance with its plain terms and meaning and contends that this Court has failed to apply rule 168 accordingly.

The relevant portion of rule 168 provides as follows:

**2. Scope.** ... Where the answer to an interrogatory may be derived or ascertained from:

a. public records; or ·

b. from the business records of the party upon whom the interrogatory has been served or from an examination, audit or inspection of such business records *... and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served;*

it is sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained.... The specification of records provided shall include sufficient detail to permit the interrogating party to locate and to identify *as readily as can the party served,* the records from which the answers may be ascertained.

TEX.R.CIV.P. 168(2) (emphasis added).

Clearly, the plain terms of rule 168 require a balancing analysis of the relative burden imposed upon the party seeking and the party responding to discovery by the assertion that the information sought is a matter of public record. At the hearing, State Farm's representative testified that the information sought in interrogatory eight was stored on computer. This testimony supports the conclusion that it is far less burdensome for State Farm to provide the information than it would be for Reed to search the public records in 254 Texas counties. Therefore, we decline to disturb the trial court's ruling requiring State Farm to answer interrogatory eight. State Farm's petition for writ of mandamus in regard to interrogatory eight is denied.

We next consider State Farm's motion for rehearing in regard to the requests for production covered in the trial court's order of September 23, 1991.

*Request for Production 2.*

All reports ever furnished to the Defendant, State Farm Mutual Automobile Insurance Company, et al, by Dr. Gary C. Freeman in connection with independent medical examinations performed by Dr. Gary C. Freeman at the request of Defendant, State Farm Mutual Automobile Insurance Company, et al., for the years 1982 through 1987.

State Farm objected to this request on grounds that it was burdensome and did not seek relevant information. State Farm's representative claimed that State Farm had already produced Dr. Freeman's reports for 1987–1989, but it was unable to obtain those reports prior to 1987 because 1987 was the first year the company used tax ID numbers for physicians, thus making the information retrievable. However, under cross examination, the representative also testified that she did not know anything about the system that was available to State Farm personnel for tracing payments to doctors for services rendered from 1982–1987. Neither had she been asked to find out that information prior to her testimony. She agreed that Reed would have to ask someone more knowledgeable on the issue. State Farm did not produce a more knowledgeable witness to testify.

Based upon the failure of State Farm to present specific evidence that the request is burdensome, we cannot say that the trial court abused its discretion in ordering the production. *Independent Insul. Glass Co. v. Street,* 722 S.W.2d 798, 802 (Tex.App.—Fort Worth 1987, orig. proceeding).

On rehearing, State Farm claims that the trial court never orally stated that State Farm had failed to prove the burdensomeness of the request, therefore, the written order was an abuse of discretion. Our holding in regard to request for production two is properly based on the trial court's written order and our review of the record from the hearing. Accordingly, we overrule State Farm's motion for rehearing on request for production two.

*Request for Production 4.*

All documents relating to company guidelines, policies or procedures that serve as criteria for evaluation whether claims are covered or excluded by any policy provisions State Farm Mutual Automo-

bile Insurance Company contends apply to Plaintiff's claim.

■ State Farm objected that this request is overbroad, vague and does not specifically designate any particular documents. State Farm also claimed that there is no issue in the case regarding coverage or the exclusion of claims by a policy provision and that the information will not lead to discovery of relevant evidence. It characterized the request as a "fishing expedition."

State Farm's representative testified that State Farm's answer to Reed's suit does not include a contention that Reed's claims are excluded by any policy provision. She also testified, in a conclusory manner, that State Farm has paid Reed's claims in accordance with the provisions of the policy. This testimony appears to beg the question because Reed's suit arises from State Farm's allegedly wrongful demand that Reed submit to an independent medical examination under relevant provisions of its policy and its eventual denial of further coverage for medical treatment on the basis of the IME. No other evidence was offered of a privilege or exemption that would protect this information. Therefore, we cannot say that the trial court abused its discretion in ordering State Farm to respond to the request for production.[2]

*Request for Production 5.*

All documents, manuals, and training materials, including all audio and video tapes used in training, overseeing, or supervising State Farm claims handling personnel.

■ State Farm objected that this request was overbroad, unlimited in time or location, frivolous, oppressive and harassing. At the hearing, Reed agreed to limit the request to those materials "in effect on the date of the IME in question" which was October 25, 1988. State Farm also claimed that the information was immaterial and would not lead to discoverable evidence. Further, State Farm claimed the material is confidential.

State Farm's representative testified, again in a conclusory manner, that she did not know how the information could possibly be relevant to any issue in the Reed case or how it could lead to the discovery of relevant evidence. She also stated that State Farm's business is built on its training programs and the production of this material, which is treated as confidential by State Farm, would require State Farm to disclose trade secrets.

Reed argued that the material is relevant because it will show how State Farm claims personnel are instructed to handle claims; the nature and extent of investigation they are required to make before they terminate benefits; and the guidelines they have been given regarding which doctors to use for IMEs.

Based upon this evidence, and the voluntary limitation by Reed, we cannot say the trial court abused its discretion in ordering production in response to request number five.

On rehearing, State Farm complains that the limitation on request for production five that was stated by Reed at the hearing and that is a part of the record before us is not included in the order from which relief is sought. We trust that Reed will abide by her agreement, stated in open court and reasserted before this Court, to so limit the request. Based upon our certainty that she will do so, we do not find mandamus appropriate.

We have reviewed the other contentions in State Farm's motion for rehearing in regard to request for production five and find them to be without merit. Accordingly, we overrule the motion for rehearing in regard to request for production five.

State Farm has raised no points on rehearing in regard to our holdings on requests for production 12 and 14, or interrogatory 13 that follow.

*Request for Production 12.*

A copy of each advertisement State Farm has used in the State of Texas for the past five (5) years.

■ State Farm objected that this request is overbroad and unlimited to any

---

**2.** State Farm does not seek rehearing as to this ruling.

particular type of insurance. Further, State Farm objected that the information sought is immaterial because the plaintiff has not shown she relied on any advertising in purchasing State Farm insurance.[3]

At the hearing, State Farm's witness testified that she could not imagine how State Farm would go about finding each advertisement it has used in the past five years in Texas. In fact, she stated that her knowledge and her testimony were limited to the knowledge of the claims department, not advertising. Counsel for State Farm argued that Reed's policy is the same as every policy issued in Texas by auto insurers, so advertising is immaterial. He also argued that Reed's husband, not Reed, was the purchaser of the policy; therefore, any advertising claims were irrelevant as to Reed. Reed responded that the ads would show the disparity between State Farm's promises to consumers and its treatment of those consumers' claims. The information is also relevant to State Farm's state of mind and the issue of punitive damages.

Again, based upon the evidence presented at the hearing, we cannot say the trial court abused its discretion in ordering this production.

We next consider together State Farm's complaints about the trial court's order in regard to Request for Production 14 and Interrogatory 13.

*Request for Production 14.*

The complete claim file of State Farm pertaining to the claim filed by Cheryl Reed against Frances Ballard, including, but not limited to all medical bills and medical reports and/or records, daily log activity sheets, inter-office communications, memorandums, notes, medical authorizations, requests for medical information, loss reserves set on the file, name of the handling adjuster and time period of involvement, file jacket, and any other information relevant to said claim file.

*Interrogatory No. 13:*

State the amount of loss reserves that are or were set aside by State Farm, its agents,

servants and/or employees in connection with Cheryl Reed's claim/claims against your insured, Frances Ballard, in connection with State Farm claim # 53–1290–848 and otherwise identified by lawsuit styled 88CV2641; CHERYL REED, Individually a/n/f BRANCE REED v. FRANCES BALLARD on file in Galveston County in connection with the automobile accident in question occurring on or about 2/20/88.

State Farm objected to request for production 14 on grounds that the file is being handled by a different unit of State Farm over which the persons defending the bad faith suit have no authority. State Farm also asserted that the information in the file is immaterial and would not lead to discovery of admissible evidence and that disclosure of the information would breach Ballard's right of privacy. Further, State Farm claimed and presented testimony that the work product and party communications privileges protect the file.

Likewise, State Farm's objection to interrogatory 13 was that the data is immaterial, that it was contained in a claim file being handled by another State Farm unit and that the information was protected by work product and party communications privileges.

In response to State Farm's assertion of the "work product" and "party communications" privileges, Reed asserts that work product and party communications are "investigative" privileges and none of the investigative privileges protects documents from discovery in litigation separate from the pending litigation. *Allen v. Humphreys*, 559 S.W.2d 798, 803 (Tex.1977); *Eddington v. Touchy*, 793 S.W.2d 335, 336 and n. 1 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding).

■ The Supreme Court has very recently addressed the duration of the attorney work product privilege. *Owens–Corning Fiberglas Corp. v. Caldwell*, 818 S.W.2d 749 (Tex.1991). There, the trial court ruled that work product from other cases involving Owens–Corning was discoverable because it had not been generat-

---

3. Actually, Reed is not the policyholder; the policy was purchased by her ex-husband.

ed specifically in defense of the case before the court. The Supreme Court found, however, that it would defeat the primary purpose of the privilege—to provide a protected area within which a lawyer can analyze and prepare his or her case—if the privilege were limited only to documents that were prepared in the particular case for which discovery is sought. Therefore, although the rule governing the work product privilege does not specifically state whether work product loses its protected status when sought to be discovered in another case, the Court decided that the mental processes, conclusions, and legal theories developed by the attorney (but not the facts acquired by him) enjoy continuing protection under the work product privilege and are not discoverable in another case.[4]

Accordingly, in relation only to State Farm's challenge to the trial court's ruling on request for production 14 and interrogatory 13, we believe that the trial court should have the opportunity to reconsider his rulings in light of the Supreme Court's opinion in *Owens–Corning Fiberglas*. Accordingly, we deny State Farm's petition for writ of mandamus in regard to request 14 and interrogatory 13 without addressing the merits of those aspects of the petition and without prejudice to State Farm's again requesting relief after the trial court has had the opportunity to reconsider those aspects of its ruling. *See Hartford Accident & Indemnity Co. v. Abascal*, 814 S.W.2d 389 (Tex.1991).

We conditionally grant mandamus in regard to interrogatory seven and direct the trial court to limit the answer required of State Farm to the information available through State Farm's computer listings of lawsuits filed in the state of Texas. The writ will issue only if the trial court fails to amend its order appropriately. We assume that Judge Dalehite, the presiding judge of the 122nd district court in which the underlying case is pending, will honor our decision in amending Judge Engelke's order. Mandamus will issue only in the event he refuses to do so. In all other respects,

State Farm's petition for writ of mandamus and its motion for rehearing are overruled.

---

4. In arriving at this conclusion, the Court specifically distinguished *Allen v. Humphreys*.