425 S.E.2d 577

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Petitioner,**

**v.**

**Honorable Booker T. STEPHENS, Judge of the Circuit Court of McDowell County, Donald Ray Perkins and Sheila D. Perkins, Respondents.**

**No. 21368.**

Supreme Court of Appeals of West Virginia.

Submitted Dec. 1, 1992.

Decided Dec. 16, 1992.

R. Carter Elkins, Laura L. Gray, Campbell, Woods, Bagley, Emerson, McNeer & Herndon, Huntington, for petitioner.

G. David Brumfield, Welch, for respondents Donald Ray Perkins and Sheila D. Perkins.

John M. Hedges, Charleston, for respondent Booker T. Stephens.

MILLER, Justice:

In this original proceeding in prohibition, State Farm Mutual Automobile Insurance Company (State Farm) asks us to prevent the Circuit Court of McDowell County from enforcing an order entered July 10, 1992, which held State Farm in contempt for failing to comply with court-ordered discovery and assessed a penalty against State Farm of $5,000 for each day of continued noncompliance. State Farm contends that the trial court's discovery order was oppressive and unduly burdensome and that the contempt citation was, therefore, unwarranted. We agree, and we grant the writ of prohibition prayed for, as moulded.

## I.

The history of this case is long and tortuous. Respondent Donald Ray Perkins, a resident of McDowell County, was rendered a quadriplegic as the result of an automobile accident which occurred in Virginia in February 1982 and was caused by another driver whose identity is unknown. In order to recover under the uninsured motorist provisions of his automobile insurance policy, issued by State Farm, Mr. Perkins and his wife, Sheila D. Perkins (the plaintiffs), instituted a "John Doe" tort action in the Circuit Court of McDowell County. State Farm removed the tort action to federal court and filed a declaratory judgment action, seeking a judgment of noncoverage. These actions were consolidated, and the case proceeded to the summary judgment stage in federal court.

The federal district court then certified to this Court questions concerning the appropriate choice of law and application of the "physical contact" requirement. We answered these questions in *Perkins v. Doe*, 177 W.Va. 84, 350 S.E.2d 711 (1986). As a result, the federal district court entered a summary judgment in favor of the plaintiffs on the issue of coverage and remanded the tort action to the Circuit Court of McDowell County. The tort action was tried on September 26, 1989, and the jury rendered a verdict of $3.5 million for the plaintiffs.

On February 27, 1990, the plaintiffs instituted an action against State Farm in the Circuit Court of McDowell County, alleging that State Farm unreasonably and in bad faith refused to settle the "John Doe" action for the policy limits of the uninsured motorist coverage. The plaintiffs also alleged that State Farm violated the Unfair Trade Practices Act, W.Va.Code, 33–11–1, *et seq.* Along with the complaint, the plaintiffs filed a set of interrogatories, which, among other things, asked State Farm to provide information on every claim filed against it, nationwide, since 1980 which involved allegations of bad faith, unfair trade practice violations, excess verdict liability, or inquiries from insurance industry regulators concerning State Farm's handling of claims.[1]

State Farm filed no responses or objections to the plaintiffs' interrogatories. On July 16, 1990, the plaintiffs filed with the circuit court a motion to compel State Farm to respond to the interrogatories. On August 1, 1990, State Farm filed a motion for a protective order, asking the trial court to limit the scope of the plaintiffs' discovery. Apparently, there was no hearing on either of these motions.

On May 31, 1991, the plaintiffs filed a second motion to compel discovery. A hearing was conducted before the circuit court on July 1, 1991. Although no transcript of this hearing has been provided to this Court, it appears that State Farm challenged at least some of the plaintiffs' interrogatories as being unduly burdensome.[2] The court granted the plaintiffs' motion to compel discovery and ordered State Farm

---

**1.** Plaintiffs' Interrogatory No. 15 requested the following information:

"State every claim alleging bad faith or violation of unfair trade practices against defendant in the United States from 1980 to the present. As to each claim or alleged incident, state:
(a) the name and address of claimant;
(b) the name, address, and phone number of claimant's attorney;
(c) whether an action was filed and, if so,
(i) the style of the action;
(ii) civil action number and name of court and state; and
(iii) disposition."

Interrogatory No. 16 had a similar format and requested a list of "each and every claim made against the defendant involving excess verdict liability from 1980 to the present." Interrogatory No. 18 asked for identification of "each inquiry received by State Farm ... from 1980 to the present from insurance commissioners in the United States relative to questions of its handling, investigation, and settlement of claims."

In addition, Interrogatory No. 5 asked whether State Farm had "ever litigated the issues of failure to offer uninsured motorist coverage, commercially effective offer, knowing and informed waiver, or any related matter[.]" It appears, however, that the parties have settled the claims to which this interrogatory relates.

**2.** It is alleged in the plaintiffs' brief that these objections were raised by State Farm in its motion for a protective order filed on August 1, 1990. This motion is not among the exhibits filed with this Court.

to respond fully to all of the plaintiffs' interrogatories by September 15, 1991. State Farm's counsel was apparently directed to prepare an order reflecting the court's ruling at the July 1, 1991 hearing. For some reason, however, this order was not prepared until November of 1991. On November 19, 1991, the order compelling discovery was entered by the circuit court, *nunc pro tunc* to July 1, 1991. Shortly thereafter, State Farm's local counsel withdrew from representation and present counsel took over its defense.

On February 20, 1992, the plaintiffs filed with the court a motion for partial summary judgment or, in the alternative, for sanctions against State Farm under Rule 37 of the West Virginia Rules of Civil Procedure. The plaintiffs alleged that State Farm had still not responded to any of their interrogatories and was in contempt of the November 19, 1991 discovery order.

On February 27, 1992, State Farm filed partial responses to the plaintiffs' interrogatories, apparently providing information regarding bad faith and excess verdict claims filed against State Farm in West Virginia and the log of complaints filed against it with the West Virginia Insurance Commissioner. That same day, State Farm filed a motion for reconsideration of the November 19, 1991 order on the ground that the plaintiffs' interrogatories seeking disclosure of data on claims filed throughout the country were oppressive and unduly burdensome. Attached to the motion was the affidavit of Gary Driscoll, a State Farm employee, which indicated that State Farm had no index or computer program which would enable it to locate the information requested by the plaintiffs. Mr. Driscoll stated that producing a list of all bad faith claims filed against State Farm since 1980 would require manual inspection of all

State Farm claim files, active and retired, throughout the country for the period in question and would cost over $40 million.[3]

A hearing, which was styled by the circuit court as a show cause hearing to determine whether State Farm should be held in contempt of court, was conducted on May 14, 1992. Mr. Driscoll testified as to the matters contained in his affidavit and was cross-examined by the plaintiffs' attorney. By order dated July 10, 1992, the trial court found State Farm in contempt of the November 19, 1991 discovery order and assessed a fine of $5,000 for every day after entry of the contempt order that State Farm failed to provide the required responses to the plaintiffs' interrogatories. A hearing on State Farm's motion for reconsideration of the November 19, 1991 discovery order was held on August 7, 1992, and, by order dated September 3, 1992, the trial court denied the motion.

On September 18, 1992, State Farm instituted this proceeding in prohibition. State Farm contends that the November 19, 1991 discovery order is oppressive and unduly burdensome and asks us to prevent the circuit court from enforcing that order and the contempt order.

## II.

■ Initially, we note that in the past we have permitted the use of a writ of prohibition to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders. *See, e.g., Nutter v. Maynard*, 183 W.Va. 247, 395 S.E.2d 491 (1990); *Michael v. Henry*, 177 W.Va. 494, 354 S.E.2d 590 (1987). This rule is based on Syllabus Point 1 of *Hinkle v. Black*, 164 W.Va. 112, 262 S.E.2d 744 (1979).[4]

**3.** Mr. Driscoll's affidavit stated that there were 903,851 open automobile claim files in approximately 1,070 local and regional offices and approximately 33,548,000 closed files. Assuming it would take five minutes to review each file, Mr. Driscoll estimated that it would take over 2,870,000 hours to review both active and stored files, which would cost $39,000,000 in employee time. Added to this figure were retrieval costs and supervision expenses, bringing the approximate cost to $40,000,000.

**4.** Syllabus Point 1 of *Hinkle* states:

"In determining whether to grant a rule to show cause in prohibition when a court is not acting in excess of its jurisdiction, this Court will look to the adequacy of other available remedies such as appeal and to the over-all economy of effort and money among litigants, lawyers and courts; however, this Court will use prohibition in this discretionary way to correct only substantial, clear-cut,

Turning to the question of the validity of the trial court's discovery order, Rule 26 of the West Virginia Rules of Civil Procedure governs discovery generally. The scope of discovery is set out in Rule 26(b)(1), which provides, in part: "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]" [5] The rule also specifies, however, that the trial court may limit discovery if it finds that "[t]he discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." [6] W.Va.Civ.P. 26(b)(1)(iii). Rule 33(b) of the West Virginia Rules of Civil Procedure, relating to the use of interrogatories, states that "[i]nterrogatories may relate to any matters which can be inquired into under Rule 26(b)[.]"

We discussed burdensome discovery requests in *Truman v. Farmers & Merchants Bank*, 180 W.Va. 133, 375 S.E.2d 765 (1988). In *Truman*, a wrongful discharge case, the plaintiff, after answering the defendant bank's interrogatories, had submitted her own interrogatories and a request for production of documents. The bank took discovery depositions, but failed to answer the plaintiff's discovery requests. The plaintiff filed a motion to compel discovery. The bank then moved for summary judgment and made a motion to block the plaintiff's discovery as being oppressive. The trial court granted summary judgment for the bank.

In Syllabus Points 3 and 4 of *Truman*, we stated:

"3. In assessing whether discovery is burdensome or oppressive, the question is not the number of interrogatories or the fact that the interrogating party is using successive methods of discovery, or even that the interrogating party already possessed the information, but whether or not, they are unduly burdensome or oppressive when viewed with relation to the case itself; are the interrogatories unreasonable under the facts and circumstances of the particular case.

"4. Where objections are made to discovery requests, most courts require specific showing as to how each discovery request is burdensome, oppressive, or embarrassing unless such can be determined from the sheer volume of the requests in light of the case issues."

We held that the plaintiff's discovery requests were relevant to disputed factual issues and that the trial court should have ruled on the motion to compel discovery and on the bank's motion for a protective order before addressing the summary judgment motion. We found the plaintiff's discovery requests not to be unduly burdensome, and we reversed the judgment of the circuit court.

■ Rule 26 and *Truman, supra*, indicate that where a claim is made that a

---

legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts and only in cases where there is a high probability that the trial will be completely reversed if the error is not corrected in advance."

**5.** Rule 26(b) provides, in pertinent part:

*"Discovery scope and limits.* Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

"(1) In general. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]"

**6.** Rule 26(b)(1) states, in relevant part:

"The frequency or extent of use of the discovery methods set forth in subdivision (a)

shall be limited by the court if it determines that:

"(i) The discovery sought is unreasonably cumulative or duplicative or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

"(ii) The party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or

"(iii) The discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation."

Obviously, where the requested information is available from another source which is less burdensome to the opposing party, an issue not raised in this proceeding, the trial court may limit discovery under Rule 26(b)(1)(i).

discovery request is oppressive and unduly burdensome, the trial court should consider several factors. First, a court should weigh the requesting party's need to obtain the information against the burden that producing such information places on the opposing party. This requires an analysis of the issues in the case, the amount in controversy, and the resources of the parties. Secondly, the opposing party has the obligation to show why discovery is burdensome unless, in light of the issues, the discovery request is oppressive on its face. Finally, the court must consider the relevancy and materiality of the information sought.

In this case, the trial court heard State Farm's objections to the plaintiffs' interrogatories on July 1, 1991. No transcript of that hearing has been filed with this Court. We have only the court's November 19, 1991 order to reflect what occurred at the hearing. It appears that the court only considered State Farm's argument that the interrogatories objected to were unduly burdensome.[7] There is no mention made in the order of the relevancy of the material sought in the questioned interrogatories.

■ The question of the relevancy of the information sought through discovery, which essentially involves a determination of how substantively the information requested bears on the issues to be tried, is a factor that has been stressed by a number of courts. *See, e.g., Rich v. Martin Marietta Corp.,* 522 F.2d 333 (10th Cir.1975);

*State Farm Mut. Auto. Ins. Co. v. Superior Court,* 167 Ariz. 135, 804 P.2d 1323 (App.1991); *Mead Reinsurance Co. v. Superior Court,* 188 Cal.App.3d 313, 232 Cal. Rptr. 752 (1986); *Leeson v. State Farm Mut. Auto. Ins. Co.,* 190 Ill.App.3d 359, 137 Ill.Dec. 837, 546 N.E.2d 782 (1989); *State ex rel. Bankers Life & Casualty Co. v. Miller,* 160 Mont. 256, 502 P.2d 27 (1972); *Wyda v. Makita Elec. Works, Ltd.,* 162 A.D.2d 133, 556 N.Y.S.2d 78 (1990). *See generally* 4A *Moore's Federal Practice* ¶ 33.20 (1992). Under Rule 26(b)(1), discovery is not limited only to admissible evidence, but applies to information "reasonably calculated to lead to the discovery of admissible evidence."[8] Nevertheless, the information sought must be relevant to the issues in the case.

■ In the present case, the information requested by the plaintiffs was relevant to the issues involved in the civil action below. In *Jenkins v. J.C. Penney Casualty Insurance Co.,* 167 W.Va. 597, 280 S.E.2d 252 (1981), we recognized that to prove a violation of the Unfair Trade Practices Act, W.Va.Code, 33-11-1, *et seq.,* the plaintiff must show more than one violation of the statute.[9] Thus, the plaintiffs' request for information of other unfair trade practices claims against State Farm was relevant to prove their own allegations in that regard. Likewise, the plaintiffs' interrogatories sought information relevant to their bad faith claim which carried with it the potential for punitive damages.[10] Other courts

---

7. The relevant portion of the November 19, 1991 order states:
   "State Farm further argued that the discovery sought was extremely burdensome and required, prior to answer, a search of every file or claim made upon State Farm, whether resulting in a legal action or otherwise, since the year 1980. That is, it was State Farm's position it had no filing system whereby it could determine the answers to certain of Plaintiffs' Interrogatories. State Farm also claimed that excessive man hours and costs would be incurred in a laborious search of all claims filed since 1980 (and for Interrogatory number 5, back to the start of the company's operations)."

8. Rule 26(b)(1) states, in part: "It is not ground for objection that the information sought will be inadmissible at the trial if the information

sought appears reasonably calculated to lead to the discovery of admissible evidence."

9. W.Va.Code, 33-11-4(9) (1985), states, in pertinent part: "No person shall commit or perform with such frequency as to indicate a general business practice any of the following: . . ." In Syllabus Point 3 of *Jenkins,* we said: "More than a single isolated violation of W.Va.Code, 33-11-4(9), must be shown in order to meet the statutory requirement of an indication of 'a general business practice,' which requirement must be shown in order to maintain the statutory implied cause of action."

10. In Syllabus Point 3 of *Garnes v. Fleming Landfill, Inc.,* 186 W.Va. 656, 413 S.E.2d 897 (1991), we listed among the factors that the jury could consider in awarding punitive damages

have recognized that in a bad faith claim against an insurance carrier, previous similar acts can be shown to demonstrate that the conduct was intentional. *See Hawkins v. Allstate Ins. Co.,* 152 Ariz. 490, 733 P.2d 1073, *cert. denied,* 484 U.S. 874, 108 S.Ct. 212, 98 L.Ed.2d 177 (1987); *Moore v. American United Life Ins. Co.,* 150 Cal.App.3d 610, 197 Cal.Rptr. 878 (1984).

This type of related-acts evidence is admissible at trial under Rule 404(b) of the West Virginia Rules of Evidence.[11] *See generally* F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 6.6 (1986 & Cum.Supp.1992). Recently, in *Gable v. Kroger Co.,* 186 W.Va. 62, 410 S.E.2d 701 (1991), a slip-and-fall case, we recognized that this rule controlled the attempted introduction of evidence as to other falls occurring at the store.[12] In *Gable,* we stated that Rule 402 of the Rules of Evidence authorizes the introduction of relevant evidence.

■ Even where evidence is relevant, however, it may not be subject to discovery where production of the requested information is unduly burdensome. We have recognized that otherwise relevant evidence may be excluded under Rule 403 of the Rules of Evidence for a variety of reasons: "[I]f its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." [13] Thus, even relevant evidence may be inadmissible if it is needlessly cumulative. Consequently, a discovery request may be denied where the breadth of the information sought would result in the production of material so cumulative as to be inadmissible at trial.

■ The interrogatories objected to by State Farm requested information on all bad faith, unfair trade or settlement practices, and excess verdict claims filed against State Farm throughout the entire country since 1980. The plaintiffs also requested data on all complaints filed against State Farm with insurance industry regulators nationwide for the same period. In a number of cases, courts have refused to compel discovery where the requested information was less extensive than the interrogatories involved in this case. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Superior Court, supra* (request for documents relating to any bad faith lawsuits against insurer); *Mead Reinsurance Co. v. Superior Court, supra* (request for information on every bad faith claim made against insurer in six and one-half year period); *Leeson v. State Farm Mut. Auto. Ins. Co., supra* (request for information concerning all medical exams conducted by auto insurer for medical benefits claims within prior year); *State ex rel. Bankers Life & Casualty Co. v. Miller, supra* (request for names and addresses of all persons within state whose claims for health and accident disability benefits against insurer were rejected or not fully paid over three-year period). Moreover, the uncontradicted testimony of Mr. Driscoll indicated that compilation of the information requested by the challenged interrogatories

---

"whether/how often the defendant engaged in a similar conduct in the past[.]"

**11.** Rule 404(b) of the Rules of Evidence states:

"*Other Crimes, Wrongs, or Acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

**12.** In Syllabus Point 3 of *Gable,* we stated: "To be admissible at all, similar occurrence evidence must relate to accidents or injuries or defects existing at substantially the same place and under substantially the same conditions. Evidence of injuries occurring under different circumstances or conditions is not admissible." *See also Hendricks v. Monongahela West Penn Public Serv. Co.,* 111 W.Va. 576, 163 S.E. 411 (1932).

**13.** Rule 403 of the Rules of Evidence states: "**Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

would take literally years of man-hours to complete and would cost approximately $40 million.[14]

We find that the trial court did not give proper consideration to the cumulative nature of the information sought as it bore on the question of oppressive burden of production. We believe the logical approach in this case would be initially to narrow the scope of the interrogatories to other similar claims filed against State Farm in West Virginia. We note that State Farm apparently made no objection to answering Interrogatory No. 17 which requested information concerning bad faith, unfair trade practices, and unfair settlement practices claims filed against State Farm in West Virginia.[15]

It also appears that State Farm filed responses to Interrogatory No. 17 and other interrogatories on February 27, 1992, although the exhibits before this Court do not disclose what those responses were. It may be that these responses are adequate to the plaintiffs' needs so as to obviate the necessity for further discovery. If not, or if the plaintiffs object that the responses are incomplete, then the trial court should determine whether more extensive discovery is warranted.[16]

In summary, then, we conclude that the circuit court failed to consider all of the appropriate factors in determining whether the plaintiffs' interrogatories were burdensome to State Farm under Rule 26(b)(1)(iii) of the West Virginia Rules of Civil Procedure. We further conclude that although the information sought by the plaintiffs was relevant to the issues involved in the civil action below, State Farm has met its burden of showing that the plaintiffs' request for claims information throughout the country was unduly burdensome and oppressive. For these reasons, we conclude that the circuit court abused its discretion in ordering State Farm to respond to the challenged interrogatories, and that the November 19, 1991 discovery order is invalid to that extent. The order remains in effect, however, with respect to the remainder of the plaintiffs' interrogatories which were not challenged in this proceeding. We leave it to the circuit court to determine whether State Farm has adequately responded to those interrogatories and whether, upon proper motion and an

14. In their brief, the plaintiffs submit that the testimony of Mr. Driscoll must be disregarded in light of the decision in *State Farm Mutual Automobile Insurance Co. v. Engelke*, 824 S.W.2d 747 (Tex.App.1992). In *Engelke*, the plaintiff requested, through interrogatories, a list of every bad faith lawsuit filed against State Farm in Texas in the previous five years. State Farm's representative testified, as did Mr. Driscoll in this case, that no index of such lawsuits existed and that compilation of the desired data would require a costly manual examination of every claim file. State Farm's witness also testified, however, that a program could be developed to enable State Farm to retrieve the requested information from its files by computer. The Court of Appeals ruled that the trial judge was correct in ordering State Farm to answer the interrogatory *"insofar as that order requires State Farm to provide the requested information ... in the form of a computer generated response."* 824 S.W.2d at 751. (Emphasis in original).

We agree with the court in *Engelke* that where the technology is readily available to allow a party to compile information requested in discovery within a reasonable time and at a reasonable cost, the party opposing discovery can-not rely on its failure to use that technology to avoid discovery. Here, however, there was no evidence that State Farm could have obtained the requested data by writing a computer program.

15. Interrogatory No. 17 asked:

"State each and every claim against State Farm Mutual Automobile Insurance Company in West Virginia alleging an incident of bad faith, breach of West Virginia's Unfair Trade Practices Act, or unfair settlement or practices from 1980 to the present. As to each claim or alleged incident, state:
"(a) the name and address of claimant;
"(b) the name, address, and phone number of claimant's attorney;
"(c) whether an action was filed and, if so,
"(i) the style of the action;
"(ii) the civil action number and name of court and state; and
"(iii) disposition."

16. State Farm indicated at the May 14, 1992 hearing that it would be willing to answer the interrogatories with regard to its Seaboard Region which includes West Virginia and several other states.

appropriate showing of need, more extensive discovery is warranted.[17]

In view of our holding, it follows that the circuit court's contempt order of July 10, 1992, cannot be enforced to the extent that it is based on State Farm's failure to comply with the invalid portions of the November 19, 1991 discovery order. The validity of the contempt order depends on the validity of the underlying discovery order. *Greater Newburyport Clamshell Alliance v. Public Serv. Co. of N.H.*, 838 F.2d 13 (1st Cir.1988); *Securities & Exch. Comm'n v. First Fin. Group of Texas, Inc.*, 659 F.2d 660 (5th Cir.1981); *Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496 (10th Cir.1980). *See also Vincent v. Preiser*, 175 W.Va. 797, 338 S.E.2d 398 (1985).

### III.

As a final matter, State Farm also contends that the trial court had no authority to impose a *per diem* monetary fine as a sanction for civil contempt. Clearly, the trial court has the authority to exercise the contempt power for a party's failure to comply with a discovery order under Rule 37(b)(2)(D) of the West Virginia Rules of Civil Procedure, which permits the court to enter "an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination[.]" [18]

■ We explicitly recognized this power in *Vincent v. Preiser*, 175 W.Va. at 801, 338 S.E.2d at 402, where we said: "A movant for a protective order under *W.Va. R.Civ.P.* 26(c)(4) may be held in contempt of court, under *W.Va.R.Civ.P.* 37(b)(2)(D), for failure to comply with court orders compelling discovery[.]" Other courts have recognized the power to punish non-compliance with discovery orders by contempt. *See, e.g., Hodgson v. Mahoney*, 460 F.2d 326 (1st Cir.), *cert. denied*, 409 U.S. 1039, 93 S.Ct. 519, 34 L.Ed.2d 488 (1972); *Lamar Fin. Corp. v. Adams*, 918 F.2d 564 (5th Cir.1990); *Castillo v. St. Paul Fire & Marine Ins. Co.*, 938 F.2d 776 (7th Cir. 1991); *Kropp v. Ziebarth*, 557 F.2d 142 (8th Cir.1977); *Richmark v. Timber Falling Consultants*, 959 F.2d 1468 (9th Cir. 1992), *cert. dismissed*, — U.S. —, 113 S.Ct. 454, 121 L.Ed.2d 325, 61 U.S.L.W. 3060 (U.S. Oct. 29, 1992) (No. 92–31) and 61 U.S.L.W. 3155 (U.S. Oct. 29, 1992) (No. 92–305). *See generally* 23 Am.Jur.2d *Depositions & Discovery* § 393 (1983 & Supp. 1992). Thus, it is clear under Rule 37(b)(2)(D) of the Rules of Civil Procedure that a court has the power to find a party in contempt for failure to obey a discovery order, except an order to submit to a physical or mental examination.

Other courts have recognized that the imposition of a *per diem* fine is an appropriate sanction for civil contempt of a discovery order when the purpose of the monetary sanction is remedial rather than punitive. *See Hodgson v. Mahoney, supra; Richmark Corp. v. Timber Falling Consultants, supra; New York v. Shore Realty Corp.*, 763 F.2d 49 (2d Cir.1985); *International Business Mach. Corp. v. United States*, 493 F.2d 112 (2d Cir.1973), *cert. denied*, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974); *Powers v. Chicago Transit Auth.*, 890 F.2d 1355 (7th Cir. 1989); *United States v. Westinghouse*, 648 F.2d 642 (9th Cir.1981). As the court stated in *Westinghouse*:

"[T]he purpose [of the fines] was to compel the companies to comply with the court's schedule for discovery.... [T]he court in which the action is pending may make such orders in regard to the failure as are just, and among others are the following:

\*   \*   \*   \*   \*   \*

"(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination[.]"

This rule is the same as Rule 37(b)(2)(D) of the Federal Rules of Civil Procedure.

---

**17.** Part of the plaintiffs' discovery request was a motion to produce the original defense attorney's file. This matter was not addressed by the trial court in its November 19, 1991 order nor its subsequent orders. Consequently, we do not address this issue.

**18.** Our Rule 37(b)(2) provides, in relevant part: "Sanctions by Court in Which Action is Pending.—If a party or an officer, director, or managing agent of a party ... fails to obey an order to provide or permit discovery ... the

companies could have purged themselves of contempt and of any fine through timely compliance. The sanctions were therefore remedial rather than punitive, prospective and for the benefit of the other party to the litigation rather than unconditional, retrospective, or in vindication of the state's authority.... In short, the fines were compulsory in nature, ... and as such the contempt was civil. That the companies were forced to pay the piper even though they belatedly complied with the orders does not alter the civil nature of the contempt." 648 F.2d at 651. (Citations omitted).

This language is consistent with our view of the nature of a civil contempt, as expressed in Syllabus Point 2 of *State ex rel. Robinson v. Michael,* 166 W.Va. 660, 276 S.E.2d 812 (1981):

> "Where the purpose to be served by imposing a sanction for contempt is to compel compliance with a court order by the contemner so as to benefit the party bringing the contempt action by enforcing, protecting, or assuring the right of that party under the order, the contempt is civil."

State Farm, however, argues that *per diem* fines are not a permissible sanction for civil contempt in reliance on *Vincent v. Preiser, supra.* In *Vincent,* there had been a prior court order requiring the plaintiff to answer certain interrogatories. When the plaintiff failed to answer, the court found him in contempt of its discovery order and imposed a sanction of $7,400, a figure arrived at by assessing a penalty of $100 per day for each day after entry of the discovery order and before the contempt hearing that the defendant had not answered the interrogatories.

In *Vincent,* we held that the monetary sanction imposed blurred the line between civil contempt and criminal contempt, noting that "the predominant purpose of the monetary sanctions imposed by the trial court was to punish the appellant for his disrespect for the court's authority." 175 W.Va. at 802, 338 S.E.2d at 403. We observed: " 'That an act punished as neither wholly civil nor altogether criminal reflects an impermissible confusion or combination of purpose on the part of the sanctioning court.' " 175 W.Va. at 803, 338 S.E.2d at 404, *quoting Robinson v. Michael,* 166 W.Va. at 671, 276 S.E.2d at 818. For this reason, we concluded that the imposition of the monetary sanctions in *Vincent* was impermissible.

In *Vincent,* we indicated, in dicta, that "a prospective, *per diem* fine was inappropriate," noting that the fine imposed was not " 'in the nature of compensation or damages to the party aggrieved,' as required for a civil contempt." 175 W.Va. at 803, 338 S.E.2d at 404, *quoting* Syllabus Point 3, *State ex rel. Robinson v. Michael, supra.*

The critical factor in *Vincent* was the fact that the trial court attempted to impose a monetary fine upon the plaintiff for conduct which occurred before the plaintiff was found in contempt of the court's discovery order, a sanction which smacks of a criminal penalty, rather than a coercive civil penalty which can be purged upon compliance with the discovery order. Other courts have held that a civil contempt sanction that sets monetary penalties retroactively before the hearing on contempt for failure to comply with a discovery order cannot be enforced. *See United States v. Westinghouse Elec. Corp., supra; Lamar Fin. Corp. v. Adams, supra.* We do not read *Vincent* as precluding a *per diem* fine for contempt where, as here, the penalty is not imposed retroactively, but instead prospectively from the date of the entry of the contempt order as a means of ensuring compliance with the discovery order.

■ Thus, a civil contempt sanction that sets monetary penalties retroactively before the hearing on contempt for failure to comply with a discovery order cannot be enforced. A monetary *per diem* penalty is permissible where it is set prospectively from the date of the contempt order as a means of ensuring compliance with the underlying discovery order.

■ Sanctions intended to compensate the aggrieved party for the opposing party's failure to comply with a discovery order are authorized under Rule 37(b)(2)(E).

This subsection provides that a court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure" unless "the failure was substantially justified" or such an award would be unjust.[19] The rule clearly states, however, that such sanctions may be imposed "[i]n lieu of ... or in addition" to any of the other sanctions provided by the Rule.

## IV.

For the reasons stated, we find that the trial court abused its discretion in ordering State Farm to respond to Plaintiffs' Interrogatories No. 5, No. 15, No. 16, and No. 18 and in holding State Farm in contempt for failing to comply with the discovery order. As a consequence, to that extent a writ of prohibition is granted to prevent enforcement of the November 19, 1991 discovery order and the July 10, 1992 contempt order. We lack sufficient facts to determine if there was good-faith compliance by State Farm in its answers to those interrogatories to which it had not objected and leave that determination to the circuit court. The trial court may also determine whether additional interrogatories should be authorized as outlined in this opinion. Finally, the trial court should determine whether plaintiff's counsel is entitled to expenses and reasonable attorney's fees for enforcing the answers to interrogatories.

Writ granted as moulded.

---

**19.** The relevant portion of Rule 37(b)(2)(E) of the Rules of Civil Procedure states, in pertinent part:

"In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."