# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia ex rel.**
**City of Weirton,**
**Petitioner**

**FILED**
**September 23, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 14-0279 (Brooke County No. 11-C-50)**

**The Honorable David J. Sims,**
**Judge of the Circuit Court of Brooke County,**
**Respondent**

### MEMORANDUM DECISION

Petitioner, the City of Weirton ("Weirton"), by counsel Thomas E. Buck, invokes this Court's original jurisdiction seeking a writ of prohibition to prevent the Circuit Court of Brooke County from allowing respondent, Terry DiBacco, a former police officer for Weirton, from taking the deposition of Dean Makricostas, a lawyer who was not formally retained by Mr. DiBacco, but who nevertheless assisted Mr. DiBacco following his placement on administrative leave by Weirton. Mr. DiBacco seeks to depose Mr. Makricostas for the purpose of establishing that Weirton, through its lawyer, Mr. Vince Gurrera, had required Mr. DiBacco to present only a general medical release, as opposed to a mental health release, in order to be reinstated to his employment as a police officer.

This Court has considered the parties' briefs and the documents attached thereto, the pertinent authorities, and oral argument. We find no new or significant questions of law, and, upon application of the standards for issuing a writ of prohibition, we find no grounds upon which to grant the requested writ. For these reasons, a memorandum decision denying the writ of prohibition is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. DiBacco had served as a Weirton police officer for more than fifteen years when, in April 2009, Weirton placed him on administrative leave based upon his mental health status.[1] It appears that, following his placement on administrative leave,[2]

---

[1] Weirton submits to this Court that the administrative leave was based upon the recommendations of Mr. DiBacco's mental health physicians.

1

Mr. DiBacco enlisted the aid of his friend, Mr. Makricostas, to assist him in obtaining reinstatement to his former position. Although Mr. Makricostas is a lawyer, documents submitted to this Court by the parties indicate that Mr. Makricostas was never retained as Mr. DiBacco's lawyer.[3] In fact, Mr. Makricostas later withdrew all assistance and informed Mr. DiBacco that he would not be able to provide legal representation in this matter.[4] The nature of Mr. Makricostas' participation in Mr. DiBacco's efforts to return to work also was mentioned in an email authored by Mr. Gurrera, which stated, in part,

> I understand that Dean [Makricostas] is not technically representing Terry [DiBacco] but is trying to facilitate the meeting in order to establish and maintain a peaceful relationship between the parties and to give Terry [DiBacco] some guidance in how he is to proceed. I really appreciate Dean's efforts. . . .

While Mr. Makricostas was still attempting to assist in this matter, he was apparently involved in at least one communication wherein Mr. Gurrera set out the requirement for Mr. DiBacco's reinstatement. Mr. DiBacco asserts that Mr. Gurrera advised that only a medical release, as opposed to a mental health release, would be required for his reinstatement.

Sometime later, after the communication, Mr. DiBacco submitted to Weirton a release from his family physician stating that he was under no physical restrictions. His submission of this release did not result in his reinstatement to his position as a Weirton police officer. Mr. DiBacco states that he was advised by Weirton that he either had to apply for a disability pension or be terminated.[5]

---

[2] Weirton states that Mr. DiBacco received full pay while he was on administrative leave.

[3] Mr. DiBacco did, however, refer to Mr. Makricostas as his lawyer when giving deposition testimony.

[4] Weirton had objected to Mr. Makricostas representing Mr. DiBacco because Mr. Makricostas had represented other Weirton police officers and, according to Weirton, had access to confidential privileged information. Mr. Makricostas therefore declined to provide representation to Mr. DiBacco based upon the appearance of a conflict.

[5] Weirton asserts that Mr. DiBacco applied for disability, and his claim was granted by the Policeman's Pension or Relief Fund of the City of Weirton on February 27, 2011.

Mr. DiBacco filed suit against Weirton and the Board of Trustees of the Policeman's Pension or Relief Fund of the City of Weirton claiming disability discrimination under the West Virginia Human Rights Act.[6]   A primary issue in the case is the type of medical release, physical or mental, that was required by Weirton for Mr. DiBacco's reinstatement.   Mr. DiBacco asserts that he was never required by Weirton to provide a mental health release.   To support this assertion, Mr. DiBacco sought to take the deposition of Mr. Makricostas.

After Mr. DiBacco filed a subpoena to take the deposition of Mr. Makricostas, Weirton filed a motion for a protective order and a motion to quash the subpoena.   By order dated March 6, 2014, the Circuit Court of Brooke County denied the same.   The circuit court expressly stated that it made "no findings or conclusions as to whether the alleged statements made by Mr. Gurrera are admissible under the Rule [sic] of Evidence."   The circuit court explained that, while compromise and offers of compromise are generally not admissible under Rule 408 of the West Virginia Rules of Evidence, Rule 408 does not address their discoverability or define them as privileged communications.   Thus, the circuit court reasoned, "without some context in which the statements regarding a release were made, the Court is unable to rule on the admissibility of the statements."   Moreover, because of the "factual dispute as to what type of release [Weirton] was requiring the Plaintiff to produce," the circuit court found that "there exists the likelihood that admissible evidence will be generated by the deposition." Accordingly, the circuit court concluded that,

> . . . Mr. Makricostas' deposition may to [sic] be taken as part of discovery to determine the ultimate issue of whether any of the evidence is admissible under the Rules of Evidence.
>
> 10) The Court concludes that the Rules of Evidence do not preclude the taking of the deposition of Mr. Makricostas.
>
> 11) However, the Court may, upon completion of discovery, preclude the admission of the evidence should this matter proceed to trial.

Weirton then filed the instant petition seeking a writ of prohibition to prevent Mr. DiBacco from deposing Mr. Makricostas.

"Prohibition lies only to restrain inferior courts from proceeding in causes

---

[6]While the Board of Trustees of the Policeman's Pension or Relief Fund of the City of Weirton is a co-defendant in the proceedings below, that entity was not named in the instant petition for writ of prohibition and has not taken a position on the issue herein raised.

over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Syl. pt. 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953). Weirton claims that the lower tribunal has exceeded its legitimate powers. Therefore,

> this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, in part, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

Weirton characterizes this case as one in which a plaintiff seeks to take the discovery deposition of his own former lawyer regarding the substance of unsuccessful pre-suit settlement negotiations between the parties. Based upon this characterization, Weirton argues that the deposition would violate West Virginia Rule of Evidence 408 and West Virginia Rule of Civil Procedure 26(b)(1); would have a chilling effect on future settlement negotiations throughout the State of West Virginia; and would undermine the public policy of West Virginia favoring settlement negotiations. Weirton reasons that Rule 408 precludes the admission of "[e]vidence of conduct or statements made in compromised negotiations." Thus, Weirton argues, because discovery must be reasonably calculated to lead to the discovery of *admissible* evidence pursuant to Rule 26(b)(1), and because, under Weirton's theory, the deposition of Mr. Makricostas would be inadmissible as settlement negotiations pursuant to Rule 408, the deposition should be prohibited.

Respondent, Mr. DiBacco, presents a different characterization of the underlying facts. He states that he sought the help of his friend, Mr. Makricostas, to learn what would be required by Weirton for him to return to his employment. Mr. Makricostas never officially represented Mr. DiBacco and ultimately advised Mr. DiBacco that he would be unable to provide representation due to Weirton's objection based upon a conflict of interest. Mr. DiBacco argues that Weirton failed to present

4

evidence that the statements about which he seeks to depose Mr. Makricostas were part of any compromise, and there is no such evidence. Mr. DiBacco asserts that pre-claim communications between employers and employees are routinely allowed into evidence in employment cases.

The circuit court resolved the issue herein raised, in part, by pointing out that Rule 408 addresses the *admissibility* of compromise offers, not whether such offers are *discoverable*. We find this conclusion was unnecessary insofar as Weirton has merely asserted, without supporting evidence, that Mr. Makricostas engaged in settlement negotiations on behalf of Mr. DiBacco. In this case, there simply was no evidence in the record to indicate that Mr. Gurrera and Mr. Makricostas engaged in settlement negotiations.[7] Nevertheless, as the circuit court correctly concluded, the fact that evidence obtained from Mr. Makricostas' deposition *may* ultimately be inadmissible does not prohibit its discovery. "[U]nder Rule 26(b)(1) of the West Virginia Rules of Civil Procedure, discovery is not limited only to admissible evidence, but applies to information reasonably calculated to lead to the discovery of admissible evidence." Syl. pt. 4, in part, *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W. Va. 622, 425 S.E.2d 577 (1992). The circuit court expressly found that the deposition of Mr. Makricostas was *likely* to lead to admissible evidence given the factual dispute regarding the type of release requested by Weirton; however, the circuit court deferred any decision regarding admissibility until such time as additional evidence obtained during discovery revealed the nature of the communications at issue. We find no error in the circuit court's reasoning.

"A writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Syl. pt. 1, *State Farm*, 188 W. Va. 622, 425 S.E.2d 577. Because we find no clear legal error resulting from a substantial abuse of discretion on the part of the circuit court, we deny the requested writ of prohibition.

Writ Denied.

---

[7]While Weirton has set out persuasive arguments for prohibiting the taking of depositions of lawyers regarding their participation in settlement negotiations, we need not address those arguments in this case insofar as we find no evidence that the communications at issue were settlement negotiations.

5

**ISSUED:**    **September 23, 2014**

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

6