Donna CASCONE, Plaintiff,

v.

The NILES HOME FOR CHILDREN, Defendant.

No. 94–1131–CV–W–1.

United States District Court,
W.D. Missouri,
Western Division.

Sept. 5, 1995.

Gwen Caranchini, Kansas City, MO, for plaintiff.

James W. Tippin, Kansas City, MO, for defendant.

## ORDER

WHIPPLE, District Judge.

Pending before this Court is The Niles Home for Children's Motion to Quash Notice of Carmen P. Moody's Deposition, filed August 25, 1995. The Niles Home for Children ("Niles Home"), defendant in this action, moves to quash Ms. Moody's deposition because Ms. Moody is acting as one of Niles Home's counsel. For the reasons set out below, we deny the motion to quash, but limit the scope of the deposition to reduce the disruption that normally accompanies the deposition of opposing counsel.

## FACTS ALLEGED [1]

Ms. Cascone worked for Niles Home as a comptroller. Ms. Cascone, a Caucasian, alleges that Niles Home discriminated against her by giving similarly-situated Black workers better benefits, by firing her on account of her race, and by replacing her with a lesser-qualified Black employee, all on account of Ms. Cascone's race. Ms. Cascone also alleges that Niles Home took these and other actions in retaliation for her asserting her rights against racial discrimination. Ms. Cascone alleges that these actions constitute violations of state and federal law.

In response, Niles Home denies that it discriminated unfairly against Ms. Cascone, but that it fired Ms. Cascone for her failure to perform her job tasks as comptroller. (Answer ¶ 39.) In particular, Niles Home alleges, *inter alia*, that Ms. Cascone was fired for "[n]on-completion and/or incorrect completion of garnishment documents." (Niles Home Answer to Cascone's First Interrogs. at 7.)

Ms. Cascone disagrees with this. Ms. Cascone admits that the previous comptroller, her predecessor, did tell her just before he left that she would be responsible for processing garnishments. (Cascone Aff. of Aug. 29, 1995 ¶ 1.) Moreover, Ms. Cascone also admits that she did not know how to process garnishments and that she informed her predecessor of this fact. (*Id.*) Ms. Cascone alleges that neither her predecessor nor anybody else connected with Niles Home showed her how to process garnishments. (*Id.* ¶¶ 1–3.)

Ms. Cascone and Niles Home vigorously dispute whether Ms. Cascone continued to be responsible for processing garnishments. In short, Ms. Cascone alleges that Ms. Moody, an attorney for Niles Home, assumed responsibility for processing the garnishments, and thus Niles Home cannot state that it fired her, Ms. Cascone, for mishandling the garnishments. In support, Ms. Cascone alleges the following:

(1) Ms. Moody, Niles Home's current counsel, informed Ms. Cascone that Ms. Moody's office would be handling the garnishments. (*Id.* ¶ 4.)

(2) Clement Cobbs, Niles Home's director of administration, took the garnishment files from Ms. Cascone's office, telling her that Ms. Moody wanted him to deliver the garnishment files to Ms. Moody's office. (*Id.* 5.) This occurred in February, 1994. (*Id.*)

(3) After the files were transferred, Ms. Cascone understood that she was still responsible for withholding money from employees' checks for garnishment. (*Id.*)

(4) Because Ms. Cascone did not possess the garnishment files, she relayed to Ms. Moody the information she needed through various people. (*Id.* ¶ 6.)

(5) Ms. Moody never provided Ms. Cascone with the required information on a timely basis. (*Id.*)

---

1. The Court hastens to add that it reserves judgment as to whether any of the disputed allegations are substantiated in fact. The Court lists them merely to illustrate the parties' dispute.

(6) When attorneys called regarding garnishments, Ms. Cascone referred them to Ms. Moody. (*Id.* ¶ 10.)

(7) Nobody ever criticized Ms. Cascone for her handling of the garnishments. (*Id.* ¶ 9.)

(8) After Ms. Moody returned the files in late April, Ms. Moody did not give Ms. Cascone any training or instruction as to how to process the garnishment files. (*Id.* ¶ 7.)

(9) The files were taken from Ms. Cascone in early June for review. (*Id.*) She did not see the files after that time, nor was she given any information to update the files, with one exception. (*Id.* ¶ 8.) She was fired in late July.

Accordingly, Ms. Cascone seeks to depose Ms. Moody to clarify how the garnishments were handled and who was responsible for them.

In response, Niles Home asserts through its counsel, co-counsel with Ms. Moody, that the above assertions are "bald-faced" and "unsupported". (Niles Home's Suggestions in Support of Motion to Quash Notice of Carmen P. Moody's Dep. ¶ 3, filed Aug. 25, 1995.) Niles Home's counsel asserts that Ms. Moody did not process the garnishments, and that Ms. Moody and her firm were concerned with the garnishments only after Ms. Cascone had mishandled them. (*Id.* ¶ 6.) Moreover, numerous other witnesses can testify to this. (*Id.* ¶ 4.) Therefore, claims Niles Home, Ms. Moody's deposition is unnecessary, irrelevant, and taken only to harass Niles Home and its counsel. Consequently, Niles Home filed a motion to quash the notice of deposition.

## DISCUSSION

■ Although this issue seems at first like a mundane discovery question, the Court finds that Eighth Circuit precedent and the parties' acrimony makes an extended discussion necessary.

The Eighth Circuit has cautioned against the practice of deposing opposing trial counsel. *Shelton v. American Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir.1986). Such a practice "disrupts the adversarial process, . . .

adds to the already burdensome time and costs of litigation," and "detracts from the quality of client representation," all by interfering with trial counsel's ability to prepare the client's case, remain free of conflict, and avoid spilling confidential information. *See id.*

Other consideration, however, suggest that opposing counsel can be deposed. Federal Rule of Civil Procedure 26(b)(1) holds that a party may discover information concerning "any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . ." Furthermore, opposing counsel at the outset has the duty to avoid situations where she is likely to be deposed. A lawyer must not represent a client "at a trial in which the lawyer is likely to be a necessary witness," with certain limited exceptions. Missouri Rules of Professional Conduct Rule 3.7 (1994).

■ Therefore, while one party shouldn't depose opposing counsel to gain unfair advantage, neither should opposing counsel have taken the case if he was likely to be a necessary witness. Accordingly, in *Shelton* the Eighth Circuit balanced parties' right to discover relevant unprivileged information with opposing parties' right to avoid deposition of their counsel taken merely to harass. A party may depose opposing trial counsel only after showing:

(1) no other means exist to obtain the information than to depose opposing counsel;

(2) the information sought is relevant and nonprivileged; and

(3) the information is crucial to the preparation of the case.

*Shelton,* 805 F.2d at 1327 (citations omitted).

In *Shelton,* the plaintiff attempted to depose the defendant's counsel as to the existence or nonexistence of documents which might or might not be used in litigation. *Id.* at 1325. The defendant's counsel refused to answer, claiming that her knowledge of certain documents, or lack thereof, would give the plaintiffs insight into her mental impressions of the case. As counsel stated, "any information I have concerning documents

which might possibly be responsive to your question, I've acquired solely through my capacity as an attorney for [defendants] in my efforts to find information which would assist me in defending the company in litigation, and therefore, I decline to respond to the question." *Id.* Counsel thus claimed that her knowledge of documents was work product. The Eighth Circuit agreed and held the information nondiscoverable. *Id.* at 1329.

Both parties agree that *Shelton* controls this case. This Court believes that *Shelton* is distinguishable, but finds that even a *Shelton* analysis will allow Ms. Cascone's deposition of Ms. Moody. The *Shelton* analysis follows, with comments regarding *Shelton*'s applicability following that.

## A. SHELTON *ANALYSIS*

### 1. No Other Means Available for Obtaining the Sought–After Information

Niles Home asserts that Ms. Cascone can obtain information about who was responsible for and who actually handled the garnishment files from people other than Ms. Moody. Niles Home offers as examples its former and current officers, directors, and employees, many of whom Ms. Cascone has summoned for deposition on the day Ms. Moody is to be deposed. Niles Home also seems to offer as examples the attorneys who pressed Niles Home to process the garnishments on time.

Ms. Moody is the best source for information regarding what she told Ms. Cascone regarding her responsibilities for handling garnishments, but not regarding the company's policies for handling garnishments, which may be privileged. If this will be a swearing match between Ms. Moody and Ms. Cascone, then sooner or later Ms. Moody will have to be deposed. Others might testify if they witnessed conversations between Ms. Moody and Ms. Cascone, but Niles Home does not claim that there were any witnesses. Others might testify as to official company policy, but such testimony will not rule out what Ms. Cascone was lead to believe about her responsibilities. Ms. Cascone can obtain

Ms. Moody's flat-out denial of Ms. Cascone's allegations only by deposing her, and nobody else. Therefore, the Court finds that no other means exist to obtain the information than to depose opposing counsel.

### 2. Relevancy and Absence of Privilege

The information Ms. Cascone seeks from Ms. Moody is relevant. If Ms. Cascone is right in her allegations, then Niles Home cannot list her handling of garnishments as a reason for termination. Moreover, if Ms. Cascone is right, then the Court and a jury will be much more likely to believe that Niles Home's other putative reasons for firing Ms. Cascone are mere pretext, as Ms. Cascone suggests. Therefore, the Court finds that the testimony Ms. Cascone seeks is relevant.

Niles Home asserts, however, that Ms. Moody's responses would reveal information privileged through attorney-client privilege or the work product doctrine. In support, Niles Home offers that "[t]his law firm's involvement on any of these issues [concerning the handling of garnishments] would have been in the context of legal counsel. . . ." Niles Home's Suggestions in Support of Motion to Quash Notice of Carmen P. Moody's Deposition ¶ 5. If Niles Home is correct, then *Shelton* prevents us from approving Ms. Moody's deposition.

Although the Court fails to see how information concerning *who was responsible* for garnishments is privileged, the Court declines to address that question at this time. Rather, the Court notes that Niles Home has presented its claim of privilege in conclusory and vague form, and thus has not carried its burden of proof on the matter. *See First Sec. Sav. v. Kansas Bankers Sur. Co.*, 115 F.R.D. 181 (D.Neb.1987) (holding that *Shelton* does not change the rule that the party claiming privilege has the burden of demonstrating existence of privilege). Nor are the facts concerning privilege ready for debate: the deposition has yet to occur and the questions to be posed are unknown. Finally, the Court notes that if Ms. Moody never interacted with Ms. Cascone regarding garnishments, then there will be no reason for Ms. Moody to claim privilege.

### 3. Cruciality of the Information to Preparing the Case

It could be argued by Niles Home that Ms. Moody's information concerning garnishments is not crucial to the preparation of Ms. Cascone's case, given that Niles Home offers a number of alternate reasons for her termination.

This argument fails for a number of reasons. First, Niles Home opened the door by complaining about Ms. Cascone's handling of garnishments. Second, as we noted above, if Ms. Moody was really responsible for handling garnishments, then the Court and a jury will be much more likely to believe that Niles Home's other putative reasons for firing Ms. Cascone are mere pretext. This is the heart of Ms. Cascone's case. Therefore, the Court finds that the information sought by Ms. Cascone is crucial to the preparation of her case.

### Conclusion of the Shelton Analysis

Accordingly, this Court finds that under *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir.1986), Niles Home's motion to quash Ms. Moody's deposition should be denied. But to be consistent with *Shelton,* the deposition should be limited, pursuant to Fed.R.Civ.P. 26(c), only to:

(1) whether Ms. Moody advised Ms. Cascone that handling garnishments were her responsibility;

(2) whether Ms. Moody took any actions concerning the garnishments which Niles Home asserts Ms. Cascone handled improperly or not at all;

(3) the nature of those actions, to the extent there were any, and to the extent those actions are not privileged; and

(4) what other evidence or testimony can establish the facts discovered under inquiries (1), (2), or (3), so that Ms. Moody's deposition can be as short as possible.

### B. ALTERNATIVE OR NON-SHELTON ANALYSIS

Both parties agree that Niles Home's motion to quash is controlled by *Shelton.* Upon much reflection, this Court suggests that *Shelton,* while instructive, does not control.

Key in *Shelton* was the fact that the deposing party sought information the attorney acquired only *after* the litigation began and only to prepare her client's case. *See Shelton,* 805 F.2d at 1326–30. The deposing party never claimed that the attorney was actually responsible for actions ascribed to the deposing party. In such a situation, the Eighth Circuit's concern regarding the abuse of discovery is well-placed: a party shouldn't be able to use a deposition to sucker-punch the other side's quarterback or listen in on the other side's huddle.

But in this case, Ms. Cascone seeks information concerning Ms. Moody's *own actions,* all of which were taken *before* this litigation commenced. This is a distinction worth making. As another court in this Circuit stated:

> [U]nlike the attorney in *Shelton,* whose participation in the matter was limited solely to preparing to defend [the defendant] in litigation, the involvement of [the attorneys] in the present case may predate the anticipation of litigation. In fact, it is [the attorneys'] very conduct ... that is one of the matters on which the defendant seeks discovery.

*First Sec. Sav. v. Kansas Bankers Sur. Co.,* 115 F.R.D. 181, 183 n. 1 (D.Neb.1987) (citation omitted); *see also Johnston Dev. Group v. Carpenters Local 1578,* 130 F.R.D. 348, 352 (D.N.J.1990) ("In cases where the attorney's conduct itself is the basis of a claim or defense, there is little doubt that the attorney may be examined as any other witness.") (citing cases) (dictum); *accord American Casualty Co. of Reading, PA. v. Krieger,* 160 F.R.D. 582 (S.D.Cal.1995).

■ Where the attorney's conduct itself is the basis of a claim or defense, or where the attorney's conduct occurred before the litigation started and not in anticipation of the litigation, then the opposing party has a right to the attorney's testimony. At this point, the deposition is not being taken for the purpose of harassment. Moreover, because the conduct predates the litigation, the attorney will have advance warning that she might be deposed.

Therefore, under our analysis, the deposition should still go forward, subject to the same limits suggested under the *Shelton* analysis.

## CONCLUSION

No doubt, under *Shelton* or our analysis, a party can still harass the opposing attorney by manufacturing a dispute over that attorney's conduct before the litigation began. No rule can prevent a party from lying or exaggerating unduly. The Federal Rules of Civil Procedure do, however, give this Court adequate means of punishing such conduct and it will do so to the utmost. The parties need only submit appropriate motions on appropriate evidence at the appropriate time.

For now, however, this Court finds that a deposition of Ms. Moody is appropriate under either the *Shelton* analysis or the non-*Shelton* analysis, subject to the conditions outlined above.

Accordingly, the Court DENIES Niles Home's motion to quash Ms. Moody's deposition. The Court ORDERS, however, pursuant to Fed.R.Civ.P. 26(c), that the scope of the deposition will be limited to:

(1) whether Ms. Moody advised Ms. Cascone that handling garnishments were her responsibility;

(2) whether Ms. Moody took any actions concerning the garnishments which Niles Home asserts Ms. Cascone handled improperly or not at all;

(3) the nature of those actions, to the extent there were any, and to the extent those actions are not privileged; and

(4) what other evidence or testimony can establish the facts discovered under inquiries (1), (2), or (3), so that Ms. Moody's deposition can be as short as possible.

IT IS SO ORDERED.