IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

_____

No. 24-343

_____

FILED

March 21, 2025

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel.
MARY C. SUTPHIN,
Petitioner,

v.

HONORABLE DARL W. POLING,
Judge of the Circuit Court of Raleigh County, West Virginia,
A. DAVID ABRAMS, JR., RACHEL L. ABRAMS HOPKINS,
SARAH A. ABRAMS, LANGHORNE ABRAMS, KATE M. HATFIELD,
and ANN DONEGAN (HALEY)
Respondents.

_____

PETITION FOR WRIT OF PROHIBITION

Underlying Civil Action No. CC-41-2017-C-591

WRIT GRANTED
_____

Submitted: January 29, 2025
Filed: March 21, 2025

Joseph L. Caltrider, Esquire
Bowles Rice LLP
Martinsburg, West Virginia
Counsel for Petitioner

Russell D. Jessee, Esquire
Steptoe & Johnson PLLC
Charleston, West Virginia
Counsel for Respondents Rachel L.
Abrams Hopkins, Sarah A. Abrams, and
Langhorne Abrams

James R. Sheatsley, Esquire
Gorman, Sheatsley & Company, L.C.

Beckley, West Virginia
Counsel for Respondent A. David
Abrams, Jr.

Jared C. Underwood, Esquire
Pullin, Fowler, Flanagan,
Brown & Poe PLLC
Beckley, West Virginia
Counsel for Respondents A. David
Abrams, Jr. and Langhorne Abrams

JUSTICE ARMSTEAD delivered the Opinion of the Court.

CHIEF JUSTICE WOOTON, deeming himself disqualified, did not participate in the decision of this case.

JUDGE JAMES W. COURRIER, JR., sitting by temporary assignment.

JUSTICE TRUMP, deeming himself disqualified, did not participate in the decision of this case.

JUDGE THOMAS H. EWING, sitting by temporary assignment.

SYLLABUS BY THE COURT

1.     "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight."  Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

2.     "A writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders."  Syllabus Point 1, *State Farm Mutual Automobile Insurance Company v. Stephens,* 188 W. Va. 622, 425 S.E.2d 577 (1992).

3. "When, during the pendency of a proceeding, a new procedural rule is promulgated, or an existing procedural rule is amended, a circuit court, in its discretion, may nevertheless revert to the previous rule where application of the new or amended rule would be impracticable or work injustice in that proceeding. A circuit court should, however, make every effort to apply the new or amended procedural rule to any matter pending at the time the new rule becomes effective." Syllabus Point 4, *State ex rel. Parsons v. Zakaib*, 207 W. Va. 385, 532 S.E.2d 654 (2000).

4. When a party seeks to depose opposing trial counsel, that party must show all of the following: (1) that no other means exist to obtain the sought-after information than to depose opposing counsel; (2) that the information sought is relevant and non-privileged; and (3) that the information is crucial to the preparation of the case. *See Shelton v. American Motors Corporation*, 805 F.2d 1323 (8th Cir. 1986).

Armstead, Justice:

Mary C. Sutphin[1] invokes this Court's original jurisdiction, seeking a writ of prohibition to prevent the Circuit Court of Raleigh County from enforcing its order compelling her counsel's deposition.

For the reasons set forth below we conclude that the circuit court committed a clear error of law in ordering the plaintiff's counsel's deposition and grant the requested writ.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff brought her original complaint,[2] alleging statutory violations of the Uniform Trust Code and breaches of fiduciary duties against A. David Abrams, individually and as Trustee of the Nancy Pat H. Lewis Heirs Trust, Langhorne Abrams, Kate M. Hatfield, and Ann Donegan (Haley).[3]  A first amended complaint was filed that included additional causes of action and thereafter a second amended complaint was filed.[4]

---

[1] Hereinafter, "the plaintiff."

[2] Because there is a convoluted procedural history in this matter and there is a narrow issue before this Court relating to the circuit court's ordering of the plaintiff's counsel's deposition, we will set forth only the procedural history relevant to that issue.

[3] Both Kate M. Hatfield and Ann Donegan (Haley) are self-represented below.  They make no appearance before this Court.

(continued . . .)

1

In its current iteration, the second amended complaint contains sixteen counts[5] against these remaining parties: A. David Abrams, Jr., Rachel L. Abrams Hopkins, Sarah A. Abrams, Langhorne Abrams, Kate M. Hatfield, and Ann Donegan (Haley). The second amended complaint essentially alleges that the defendants engaged in improper actions or inactions in their management of Lewis Chevrolet in Beckley, West Virginia, and that they interfered with the plaintiff's inheritance.

---

[4] This amendment listed the Estate of Nancy R. Smith and the Nancy R. Smith Revocable Trust as parties. By agreed order dated January 18, 2024, the Estate of Nancy R. Smith and the Nancy R. Smith Revocable Trust were dismissed as defendants in the action and the Joseph L. Smith III Trust, Truist Bank, co-Trustee and S. Randall Brewer, co-Trustee were substituted in their stead. A subsequent order dated August 8, 2024, dismissed the Joseph L. Smith III Trust, Truist Bank, co-Trustee, and S. Randall Brewer, co-Trustee from the underlying matter. Because of these orders, it is perplexing why the Estate of Nancy R. Smith and the Nancy R. Smith Revocable Trust are named as parties to the writ, particularly when they had been dismissed below well before this case was filed in this Court. As such, we have removed them as parties from the style of this case. We would note that John R. Hoblitzell, Esquire and John D. Hoblitzell, III, Esquire of the Charleston, West Virginia firm of Kay, Casto & Chaney, PLLC filed a summary response on behalf of the Estate of Nancy R. Smith.

To clarify the parties' identification, we will collectively refer to the remaining respondents, A. David Abrams, Jr., Rachel L. Abrams Hopkins, Sarah A. Abrams, Langhorne Abrams, Kate M. Hatfield, and Ann Donegan (Haley) as "the defendants." Should the context require, we will identify individual defendants.

[5] The specific counts in the second amended complaint include: Count I, Violations of the Uniform Trust Code; Count II, Breach of Fiduciary Duties as Trustee; Count III, Waste to the Estate; Count IV, Breach of Fiduciary Duties as Executor; Count V, Violations of the West Virginia Business Corporation Act; Count VI, Breach of Fiduciary Duties as Directors and Officers; Count VII, Conversion; Count VIII, Negligence; Count IX, Professional Negligence; Count X, Tortious Interference with Inheritance; Count XI, Fraud/Constructive Fraud; Count XII, Civil Conspiracy; Count XIII, Unjust Enrichment; Count XIV, Constructive Trust; Count XV, Punitive Damages; and, Count XVI, Attorney Fees and Litigation Costs.

2

At some point prior to the filing of the second amended complaint, over ten thousand documents were provided to the plaintiff in response to her discovery requests, which provided the impetus for the plaintiff to file her second amended complaint:

> 21. This Second Amended Complaint relates to the allegations in the Complaint and First Amended Complaint and *includes additional parties and causes of action identified from information uncovered in discovery. . . .*
>
> 22. *The extent of the Defendants' malfeasance and [the plaintiff's] damages was not known until [the circuit court] compelled Defendant David Abrams to produce documents and complete information regarding [Lewis Chevrolet]. . . .*

(Emphasis added). Subsequently, defendants Rachel L. Abrams and Sarah A. Abrams[6] sought discovery as to the factual basis of the plaintiff's allegations.[7] The specific information sought in the relevant interrogatories was the factual basis behind (1) the allegation that the plaintiff was oppressed; (2) how the propounding defendants had tortiously interfered with the plaintiff's inheritance; (3) the plaintiff's claim for damages; (4) the plaintiff's claim that she should have been paid dividends from Lewis Chevrolet; and, (5) the allegation that the value of Lewis Chevrolet stock should have increased over time.

_____

[6] Hereinafter, "the propounding defendants."

[7] These discovery requests are collectively the propounding defendants' first set of interrogatories, requests for production, and requests for admission to the plaintiff. We note that there were issues with regard to the responses to numerous requests in this set of discovery; however, the issue with compelling the plaintiff's counsel's deposition arises from the plaintiff's responses to interrogatories 3, 4, 5, 6, and 7 (hereinafter, "the relevant interrogatories.").

The plaintiff's initial response to the relevant interrogatories referred generally to her complaint and lodged an objection that the relevant interrogatories were premature. After following the requirement to confer in good faith with opposing counsel pursuant to West Virginia Rule of Civil Procedure 37(a)(2) (eff. until Dec. 31, 2024), the propounding defendants filed a motion to compel, which was referred to a discovery commissioner.[8] The discovery commissioner's recommendation, which was adopted in total by the circuit court, ordered the plaintiff to supplement her responses to the relevant interrogatories within 20 days.[9] The gravamen of the circuit court's order was that the

---

[8] In its order appointing a discovery commissioner, the circuit court referred "all existing motions to compel and associated motions for attorney['']s fees" to him. This authority was later expanded to "all current and subsequent discovery related disputes."

[9] The actual timing of the relevant interrogatories was as follows: (1) the relevant interrogatories were served on July 1, 2022; (2) the plaintiff's answers were served on July 29, 2022; (3) the propounding defendants' amended motion to compel responses to the relevant interrogatories was filed on October 21, 2022; (4) the plaintiff's supplemental answers were served on January 24, 2023 which referenced an expert report and certain financial statements of Lewis Chevrolet; (5) the discovery commissioner's recommended decision was dated March 9, 2023; (6) the circuit court order, adopting the discovery commissioner's recommended decision in total, was entered on May 19, 2023; and, (7) the third supplemental responses to the relevant interrogatories including specific references to germane paragraphs in the second amended complaint and certain Lewis Chevrolet financial statements were served on June 8, 2023. Of no moment to the issue before the Court, we note the responses referred to as the third supplemental response is actually the second supplemental response.

Prior to the discovery commissioner's March 9, 2023, recommended decision, the plaintiff had supplemented her responses to include additional information allegedly supporting the factual basis for her claims. Also, during the nearly year of litigation noted in the above paragraph, a wholly separate set of discovery was served on

(continued . . .)

4

plaintiff was to supplement her responses to the relevant interrogatories with specific references to the plaintiff's complaint: "The Court further directs the plaintiff to specifically reference any applicable paragraph of her [Second] Amended Complaint and specific items of discovery or opinions expressed by her expert(s) upon which she bases her responses at this time, with the ongoing obligation to supplement her responses as discovery continues." The plaintiff supplemented her responses and included reference to the specific paragraphs of the second amended complaint that were germane to each of the relevant interrogatories.

In an attempt to obtain additional information about the factual basis for the plaintiff's second amended complaint, over the course of two full days, the defendants took the plaintiff's deposition and asked her questions regarding the basis of her factual allegations. On numerous occasions, in response to that questioning, the plaintiff, indicated that she relied upon her lawyer for the drafting of the second amended complaint and for the information relevant to specific questions relating to the factual basis for her claims.[10]

_____

the plaintiff. That set of discovery significantly narrowed the scope of the information sought, to which the plaintiff's responses referred to the expert report she first disclosed in her supplemental answers to the relevant interrogatories.

[10] The Plaintiff identified other sources of information, aside from her lawyer, during her deposition. The plaintiff identified "a company called Bowyer and Ritter" as her damages expert and she relied upon that company's report for the basis of her damages. She named Bonnie Kunath and someone identified as "Steve" as her financial planner. The plaintiff pointed to documents obtained from David Abrams as the basis of her complaint. She alleged that Rachel Hopkins was given 60 shares of stock in Lewis Chevrolet and that should those 60 shares be "unwound" that they should go back

(continued . . .)

5

Based upon the plaintiff's responses at her deposition, the propounding defendants sought plaintiff's counsel's deposition. After receiving no response to their request for deposition dates, the propounding defendants filed a motion to compel that deposition. In response, the plaintiff filed a motion for protective order. By previous order of the circuit court, those motions were referred to the discovery commissioner. The discovery commissioner pointed to a federal case, *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), to deny the motion to compel:

> *Shelton* places the burden on the moving party, the Defendants here, to: (1) Establish no other means exist, except to depose opposing counsel; (2) the information is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case. In *Shelton*[,] the attorney-client privilege remains intact but if the 3 criteria are met there can be limited examination of counsel. In this case the 3 criteria have not been addressed by Defendants but even if addressed they cannot all be met.
>
> Specifically, criteria 2 requires Defendants to show the requested information is non privileged. Defendants specifically seek privileged information on Defendants' theory, based on USF&G, that Plaintiff has waived the privilege.
>
> Specifically, criteria 1 has not been met. Additional depositions are expected to be taken by Plaintiff of Defendant Langhorne Abrams a shareholder and trust beneficiary, Chap

---

to her mother's estate. The plaintiff also stated that David Abrams destroyed the corporate power of attorney to do "what he chooses to do" and that he refused to give her an accounting of the trust prior to her filing the initial lawsuit.

All of this information is gleaned solely from the plaintiff's deposition. Additionally, as noted below, the discovery commissioner pointed out three witnesses from whom information could be obtained to determine the facts behind the plaintiff's complaint.

6

> Hopkins a dealership sales manager and David Tifft a consultant on running car dealerships. These are other means to establish information other than from Counsel for Plaintiff.

The circuit court adopted the findings of the discovery commissioner in part, and rejected them, in part. In so doing, the circuit court first found that the plaintiff's reference to specific paragraphs in the second amended complaint were insufficient responses to discovery. The circuit court additionally found that there had been no waiver of the attorney-client privilege. Finally, without sufficient analysis of any law, including the *Shelton* test adopted by the discovery commissioner, the circuit court ordered that the plaintiff's counsel should sit for a deposition:[11]

---

[11] Specifically, the circuit court stated:

> The Court finds that the Plaintiff has exhibited a pattern of failing to provide specific facts in response to discovery throughout this case and has failed to respond without reference to her Second Amended Complaint as requested by the Defendants' discovery requests and as ordered by the Court. Plaintiff's repeated failure to provide specific facts to support her claims coupled with her repeated reliance upon "advice of counsel" during her deposition and the inclusion of counsel's "wording and phrasing" in responding to written discovery requests has prevented the Defendants from being able to adequately prepare a defense to the broad, general allegations and assertions contained in the Plaintiff's Second Amended Complaint.

> The Plaintiff has been given ample opportunity to support her numerous claims since this matter was filed seventy-seven (77) months ago, however, as of this date, she has failed to identify specific facts to support her allegations, assertions and/or theories of liability as covered by

(continued . . .)

7

Based upon the above discussion, the Court affirms the Discovery Commissioner's Sixth Recommended Decision to the extent it finds that the Plaintiff did not waive the attorney-client privilege. As for the portion of the recommended decision denying the Defendants' request to depose[] Plaintiff's counsel, the Court partially rejects the Discovery Commissioner's decision that Plaintiff's counsel should not be deposed. The Court finds that based upon the lack of specific, factual responses by the Plaintiff during her deposition and counsel's failure to craft written, supplemental responses containing the facts upon which pleadings were drafted, Plaintiff's counsel is subject to being deposed, only as to the facts communicated to him by the Plaintiff or third parties, which he used in the preparation of the Complaint, Amended Complaint, and Second Amended Complaint.

(Emphasis removed).

---

Defendants' Interrogatories 3, 4, 5, 6, and 7. This failure extends to Plaintiff's counsel's failure to provide factual information he learned from the Plaintiff or any other source, as part of the Plaintiff's responses to written discovery requests after the granting of the Defendants' Motion to Compel. The same way that Plaintiff's counsel used his knowledge and skill to draft the Complaint, Amended Complaint, and Second Amended Complaint should have resulted in Plaintiff's counsel drafting specific, factual responses to the discovery requests, based upon the facts and events relayed to him by the Plaintiff or obtained by some other source.

(Emphasis removed).

We read the circuit court's order as an expression of exasperation regarding the parties' behavior during discovery. The defendants spent two full days deposing the plaintiff, during which numerous objections were lodged and the questioning was repetitive. Additionally, during oral argument, the plaintiff's counsel admitted that it could, in fact, supplement its answers to the relevant interrogatories with references to specific documents that form the factual basis for the second amended complaint. Should the parties continue to stretch the limits of acceptable behavior in discovery, we would direct the circuit court to consider utilizing the sanctions permitted by the provisions of West Virginia Rule of Civil Procedure 37.

From the circuit court's order, the plaintiff invokes this Court's original jurisdiction in prohibition to prevent her counsel's deposition.

## II. STANDARD OF REVIEW

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).  We have previously held that a clear legal error in a circuit court's discovery orders is grounds for this Court to exercise its original jurisdiction in prohibition.  Syllabus point one of *State Farm Mut. Auto. Ins. Co. v. Stephens,* 188 W. Va. 622, 425 S.E.2d 577 (1992), provides that "[a] writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders."  With that standard in mind, we will consider the parties' arguments.

9

## III. ANALYSIS

On appeal, the plaintiff's arguments coalesce around one issue, whether the circuit court erred in granting the propounding defendants' motion to compel the deposition of plaintiff's counsel.[12] After review, we agree with the plaintiff that the circuit court committed a clear error of law in ordering the deposition to go forward. Our analysis explaining our conclusion begins with a discussion of Rules of Civil Procedure, notably this Court's recent adoption of substantive and substantial revisions to those Rules. After providing this background, we analyze the law on this issue as it has developed, including in the federal courts, and conclude that the circuit court erred.

Beginning our discussion, we note that following a years-long analysis, this Court entered an order on January 31, 2024, adopting a complete revision of the West

---

[12] The plaintiff characterizes this error as the end of a string of errors. According to the plaintiff, the first error in this chain began with the circuit court ordering the plaintiff to supplement answers to the relevant interrogatories. The plaintiff then avers that error was compounded by the circuit court's finding that the supplemental responses were inadequate. Finally, the plaintiff argues that these errors led the circuit court to order her counsel's deposition. As we note below, the plaintiff has been less than forthcoming in her responses to the relevant interrogatories. Accordingly, we see no error in the predicate actions of the circuit court.

Conversely, the propounding defendants take the position that the failure of the plaintiff to fully answer "significant" discovery, coupled with her continued pointing to her counsel as the source of information supporting various and sundry allegations in her complaint, presents "exceptional circumstances warranting counsel's deposition." These arguments are also unavailing in that they fail to take into consideration that the information they seek is available through other means. As recognized in this opinion, we find that the *Shelton* test defines those exceptional circumstances warranting opposing counsel's deposition.

10

Virginia Rules of Civil Procedure, effective January 1, 2025. This case is one of the first cases presented to this Court in which the relevant discovery-related Rules of Procedure are at issue since those Amendments to the Rules became effective. Pursuant to Rule 86 of the of the Amended Rules, the amendments apply to "all proceedings in cases thereafter commenced *and insofar as just and practicable, all proceedings then pending*." W. Va. R. Civ. P. 86 (eff. Jan 1, 2025). The provisions of Rule 86 are in accord with our caselaw, which provides:

> When, during the pendency of a proceeding, a new procedural rule is promulgated, or an existing procedural rule is amended, a circuit court, in its discretion, may nevertheless revert to the previous rule where application of the new or amended rule would be impracticable or work injustice in that proceeding. A circuit court should, however, make every effort to apply the new or amended procedural rule to any matter pending at the time the new rule becomes effective.

Syl. Pt. 4, *State ex rel. Parsons v. Zakaib*, 207 W. Va. 385, 532 S.E.2d 654 (2000). Rule 30 of the West Virginia Rule of Civil Procedure, depositions by oral examination, is the Rule that is implicated in this matter. Prior to January 1, 2025, Rule 30 provided in pertinent part, "[a]fter commencement of the action, any party may take the testimony of any person, including a party, by deposition upon oral examination." W. Va. R. Civ. P. 30(a) (eff. until Jan. 1, 2025). The amendment to this Rule makes no substantive change to the operative provisions to this appeal: "[a] party may, by oral questions, depose any persons, including a party, without leave of the court . . . ." W. Va. R. Civ. P. 30(a) (eff. Jan. 1, 2025). Because this Rule remains substantially the same and it would not be impractical or unjust to apply the Amended Rule here, we find that its provisions, effective

11

January 1, 2025, apply to the question of whether plaintiff's counsel should be compelled to be deposed in this matter.

Our Rules allow for liberal discovery. "Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party. . . ." W. Va. R. Civ. P., Rule 26(b)(1) (eff. Jan 1, 2025). Further, the West Virginia Rules of Civil Procedure do not bar the deposition of opposing counsel: "[a] party may, by oral questions, depose *any* person, including a party, without leave of the court. . . ." W. Va. R. Civ. P., Rule 30(a)(1) (eff. Jan. 1, 2025) (emphasis added). Still, this Court and other courts have recognized that opposing counsel depositions should not be routinely employed given the potential for breach of the attorney-client privilege or the work product doctrine. *See State ex rel. United Hosp. Ctr., Inc. v. Bedell*, 199 W. Va. 316, 333 n.21, 484 S.E.2d 199, 216 n.21 (1997) (taking of an opposing counsel's deposition will necessarily devolve into controversies over the attorney-client privilege and work product doctrine). Beyond attorney-client privilege and work product doctrine concerns, we are also concerned with the potential for creating a "harassing practice of deposing opposing counsel ... that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process." *Shelton* at 1330. This Court, however, has not yet had occasion to adopt any standard to balance the interests of liberal discovery with protection of those privileges and prevention of abusive discovery practices in a scenario

12

where one party seeks to depose opposing counsel regarding matters involving the underlying and pending litigation.

The operative provision of Amended Rule 30 is now identical to the provisions of the federal construct, and, as such, we give substantial weight to federal cases to determine the scope and meaning of our Rules of Civil Procedure:

> Because the West Virginia Rules of Civil Procedure are practically identical to the Federal Rules, we give substantial weight to federal cases, especially those of the United States Supreme Court, in determining the meaning and scope of our rules. *See generally Burns v. Cities Serv. Co.,* 158 W.Va. 1059, 217 S.E.2d 56 (1975); *Aetna Casualty & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963).

*Painter v. Peavy*, 192 W. Va. 189, 192 n.6, 451 S.E.2d 755, 758 n.6 (1994); *State v. McGinnis*, 193 W. Va. 147, 158, n.14, in part, 455 S.E.2d 516, 527 n.14, in part (1994), *Bowers v. Wurzburg*, 202 W. Va. 43, 49 n.11, 501 S.E.2d 479, 485 n.11 (1998), *State ex rel. Surniak Holdings of WV, LLC v. Bedell*, 244 W. Va. 248, 257 n.8, 852 S.E.2d 748, 757 n.8 (2020). In the absence of West Virginia precedent squarely addressing the considerations required in the unique situation where a party seeks to depose opposing counsel regarding the underlying litigation, we look to those federal courts that have.

Exactly as under our Rules, the Federal Rules of Civil Procedure contain no blanket protection prohibiting a party from obtaining opposing counsel's deposition. *See* Fed. R. Civ. P. 30. ("A party may, by oral questions, depose *any* person, including a party, without leave of court. . . ." (emphasis added)). "The fact that the proposed deponent is an

13

attorney, or even an attorney for a party to the suit, is not an absolute bar to taking his or her deposition. . . ." 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2102 (3d ed. 2024 Supp.). "The federal rules do not forbid deposing the counsel of an opposing party." *Desert Orchid Partners, L.L.C. v. Transaction Sys. Architects, Inc.*, 237 F.R.D. 215, 218 (D. Neb. 2006). "[T]he Federal Rules of Civil Procedure do not prohibit the deposition of another party's lawyer, as long as the deposition seeks relevant, nonprivileged information." *Navient Sols., LLC v. Law Offs. of Jeffrey Lohman, P.C.*, No. 119CV461, 2020 WL 6379233, at *4 (E.D. Va. Sept. 4, 2020). As noted by the discovery commissioner in this case, the Eighth Circuit has discussed this issue:

> In recent years, the boundaries of discovery have steadily expanded, and it appears that the practice of taking the deposition of opposing counsel has become an increasingly popular vehicle of discovery. To be sure, the Federal Rules of Civil Procedure do not specifically prohibit the taking of opposing counsel's deposition. We view the increasing practice of taking opposing counsel's deposition as a negative development in the area of litigation, and one that should be employed only in limited circumstances.

*Shelton*, at 1327. [13] In *Shelton*, opposing counsel sought the deposition of in-house counsel regarding her knowledge of whether certain documents existed or did not exist. *See id.*, at

---

[13] The Second Circuit has also adopted what has been called a "textured approach" to examine whether depositions of opposing counsel should proceed:

> [T]he standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the

(continued . . .)

14

1325. Following numerous motions attempting to prevent the deposition, the in-house counsel deponent in *Shelton* appeared at a deposition before the federal magistrate judge so that there could be contemporaneous rulings on objections raising the attorney-client privilege or work product doctrine. *See id.* At that deposition, when ordered to respond to certain questions, trial counsel instructed the in-house counsel deponent to not answer. *See id.* The federal magistrate judge then recommended that sanctions be issued, including default judgment, for in-house counsel's failure to respond to the questions as ordered. *See id.* at 1326. The United States District Court for the Western District of Arkansas adopted

> relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship. Such considerations may include the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privilege and work-product issues, and the extent of discovery already conducted. These factors may, in some circumstances, be especially appropriate to consider in determining whether interrogatories should be used at least initially and sometimes in lieu of a deposition. Under this approach, the fact that the proposed deponent is a lawyer does not automatically insulate him or her from a deposition nor automatically require prior resort to alternative discovery devices, but it is a circumstance to be considered.

*In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 72 (2nd Cir. 2003). We view the *Friedman* approach to be too malleable when a party seeks to depose opposing counsel in a pending matter because it does not first require a party to demonstrate that the information sought from opposing counsel's deposition could not be obtained from any other source. However, we do not exclude the possibility, without deciding its potential applicability, that the approach articulated in *Friedman* might still be appropriate in other future contexts where the attorney-client privilege and work product doctrine are not so prevalent a concern.

15

the federal magistrate judge's recommendation and granted default judgment. *See id*. The matter was appealed to the Eighth Circuit. Finding the practice of deposing opposing counsel to be a "negative development in the area of litigation," *id.* at 1327, the *Shelton* court set forth a three-part test, all elements of which must be satisfied, to allow a deposition of opposing counsel to go forward:

> We do not hold that opposing trial counsel is absolutely immune from being deposed. We recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition. But those circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel, *see, e.g., Fireman's Fund Insurance Co. v. Superior Court,* 140 Cal. Rptr. 677, 679, 72 Cal.App.3d 786 (1977); (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

*Id*.

Federal courts employing *Shelton* have consistently found that deposing an opponent's attorney is a drastic measure and is infrequently proper. *See M & R Amusements Corp. v. Blair,* 142 F.R.D. 304, 305 (N.D.Ill. 1992); *see also Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999) ("Generally, federal courts have disfavored the practice of taking the deposition of a party's attorney; instead, the practice should be employed only in limited circumstances."). Indeed, federal district courts in West Virginia have approvingly cited *Shelton*. *See U.S. ex rel. May v. Perdue Pharma L.P.*, No. CIV.A.

16

5:10-1423, 2014 WL 4960944 (S.D.W. Va. Oct. 2, 2014); *Am. Heartland Port, Inc. v. Am. Port Holdings, Inc.*, No. 5:11-CV-50, 2014 WL 12605549 (N.D.W. Va. Apr. 7, 2014).

We thus agree with those federal courts that depositions of opposing counsel engaged in active litigation should be rarely employed. When a party seeks to depose opposing trial counsel, that party must show all of the following: (1) that no other means exist to obtain the sought-after information than to depose opposing counsel; (2) that the information sought is relevant and non-privileged; and (3) that the information is crucial to the preparation of the case. *See Shelton v. American Motors Corporation*, 805 F.2d 1323 (8th Cir. 1986).

Before this Court will entertain and issue a writ of prohibition, there are five factors that this Court must consider. *See* Syl. Pt. 4, *Hoover*, 199 W. Va. 12, 483 S.E.2d 12. After weighing the *Hoover* factors, we find a writ of prohibition is proper. As to the first factor, the plaintiff had no other adequate means to address the attorney-client privilege and work product doctrine issues that permeate this matter than to seek a writ of prohibition. The second factor is satisfied because if the plaintiff's counsel were to sit for a deposition, the cat would be out of the bag and the resulting answers would damage and prejudice the plaintiff in ways that would be uncorrectable, on an appeal or otherwise. As to the fourth factor, we have been presented with no evidence establishing that this an "oft repeated or persistent" issue. The petition does, however, satisfy the fifth factor as this is a novel issue of law in West Virginia.

17

We have long held that "[a]lthough all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syl. Pt. 4, in part, *id.* In assessing the third factor, we conclude that the circuit court made a clear error of law by not analyzing legal factors in ordering counsel's deposition to go forward. We acknowledge that this Court had not yet adopted the *Shelton* standard in cases such as this, and the circuit court cannot be faulted for not applying that specific test. However, the circuit court's order does not utilize any legal standard when it ordered the deposition of the plaintiff's counsel. As we have previously held, "[t]he discretion that is normally given to a trial court's procedural decisions does not apply where the trial court makes no findings or applies the wrong legal standard." Syl. Pt. 5, in part, *State ex rel. Med. Assurance of W. Virginia, Inc. v. Recht*, 213 W. Va. 457, 583 S.E.2d 80 (2003). Because a circuit court has no discretion to apply the wrong legal standard, a circuit court's omission of any legal standard is certainly erroneous. The circuit court's error was compounded when it rejected its discovery commissioner's application and analysis of the *Shelton* test. Indeed, the circuit court's discovery commissioner concluded under *Shelton* that the deposition should not be had. Thus, four of the five *Hoover* factors have been satisfied in this matter.

We agree with the discovery commissioner's analysis under *Shelton*, for two reasons. First, the information in this case could plainly be obtained from other sources. In addition to the specific persons who have yet to be deposed, as noted by the discovery

18

commissioner, *supra*, we identified in footnote ten, *supra*, a litany of sources of information we gleaned from our review of the plaintiff's deposition. Additionally, as also noted above, the plaintiff conceded at oral argument that it could supplement its responses with references to the specific documents that formed the basis of the allegations in its second amended complaint. Plainly, the information sought from the plaintiff's counsel's deposition can be obtained from other sources. As the Eastern District of Pennsylvania stated:

> In sum, despite at least five different, less-intrusive options, defendants have refused to accept anything less than [opposing counsel's] deposition. The record, however, reveals that [opposing counsel's] deposition would be duplicative, not only of the significant amount of testimony on the subject that defendants' already have, but also of the additional evidence it can otherwise obtain. To require plaintiffs' trial counsel of record to appear for a deposition and face imminent disqualification from this case, despite defendants' minimal need for the information he could provide, would not only disrupt the course of this litigation, but would contravene the very discovery principles underlying the Federal Rules of Civil Procedure.

*Peerless Heater Co. v. Mestek, Inc.*, No. CIV. A. 98-6532, 2000 WL 151281, at *8 (E.D. Pa. Feb. 7, 2000).

Second, the circuit court's order on its face would require counsel to delve into issues of attorney-client privilege and the work product doctrine. In fact, the discovery commissioner specifically found that the propounding defendants' deposition request actually sought information subject to the attorney-client privilege. Despite this, the circuit court allowed the "[p]laintiff's counsel . . . to be deposed, only as to *the facts communicated*

19

*to him by the Plaintiff* or third parties, which he used in preparation of the Complaint, Amended Complaint, and second Amended Complaint." (Emphasis added). However, any discussions plaintiff's counsel had with his client regarding the formulation of the second amended complaint are presumptively protected by the attorney-client privilege. Thus, the circuit court's order necessarily invades the province of the attorney-client privilege and the work product doctrine by seeking communications between counsel and the plaintiff and by delving into his mental impressions which he necessarily "used in the preparation" of the various complaints.[14]

As a California court aptly stated, "[t]he adversarial system of justice presumes that the attorneys for each side oppose one another, not depose one another." *Carehouse Convalescent Hosp. v. Superior Ct.*, 50 Cal. Rptr. 3d 129, 130 (2006). "Or, as another federal judge put it: '[A] party shouldn't be able to use a deposition to sucker-punch the other side's quarterback or listen in on the other side's huddle.'" *Id.* at 133 (quoting *Cascone v. Niles Home for Children* 897 F. Supp. 1263, 1267 (W.D. Mo. 1995)).

---

[14] Curiously, the propounding defendants do not challenge the discovery commissioner's and circuit court's findings that the attorney-client privilege had not been waived. Because of this, had counsel's deposition gone forward, it would have necessarily been littered with privilege objections that the discovery commissioner and circuit court would have to later sort out. In light of the clear privilege issues the deposition would create and the fact that the information sought from the plaintiff's counsel could be obtained from numerous other sources, defendants plainly are not entitled to the requested deposition.

## IV. CONCLUSION

We issue the writ prohibiting enforcement of the circuit court's order requiring the plaintiff's counsel's deposition because the propounding defendants failed to demonstrate the information was not obtainable from another source.

Writ granted.